THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. NATHAN WHEATMAN, JERRY JEROME, SAMUEL SPECTOR, JERED CONTRACTING CORP. and DUNRITE PAINTING Co., INC., Appellants.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ARNOLD MARCUS and MARCUS DECORATING Co., INC., Appellants.

First Department, November 6, 1969.

*Irvin Anolik* for Nathan Wheatman, appellant.

*Irving Anolik* and *Rudolph Ebenfeld* of counsel for Jerry Jerome and Jered Contracting Corp., appellants.

*Benjamin Shedler* of counsel (*Allen H. Weiss* with him on the brief; *Shedler & Weiss,* attorneys), for Samuel Spector and Dunrite Painting Co. Inc., appellants.

*Frederick H. Block* for Arnold Marcus and Marcus Decorating Co. Inc., appellants.

*Joseph A. Phillips* of counsel (*Michael R. Juviler* and *Alan Scribner* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

*Per Curiam.* Judgments entered May 24, 1968 and June 20, 1968 convicting defendants-appellants of conspiracy and bribery reversed on the law, and a new trial ordered. The search warrant issued June 15, 1965 is vacated and the evidence seized upon its execution is suppressed.

Defendants' motion to vacate the search warrant and to suppress the records seized in the execution thereof predicated upon the insufficiency of the affidavit of Assistant District Attorney Joseph A. Phillips should have been granted. The documents seized and introduced at the trial were vital to the People's case for, except as to defendant Wheatman, they provided the necessary corroboration of the incriminating testimony given by coconspirators which, standing alone, would be insufficient to convict.

The Phillips' affidavit recites that there was a bid-rigging arrangement on work for the New York City Housing Authority among a number of painting contractors, that in connection therewith the contractors obtained estimates of the man-days that it should take to paint certain portions of Authority projects; that these estimates were solely for the internal use of the Authority and that parties to the bid-rigging agreement obtained copies thereof and utilized them to submit false bids to the Authority. All of the foregoing is said to have been testified to by a number of witnesses before the Grand Jury, but the affidavit is barren of any identification of the alleged witnesses, of the substance of the testimony claimed as support for affiant's conclusion and of anything to indicate the basis of the witnesses' testimony or to demonstrate the reliability of such testimony. The affidavit concludes: " That based upon the foregoing reliable information and upon my personal knowledge there is probable cause to believe that the estimate information has been wrongfully obtained from the Housing Authority, that it has been utilized by the parties to the agreement to submit false bids to the Housing Authority and that copies of the estimate information may be found in the files of each of the parties to the corrupt agreement at the addresses set forth above." Affiant's conclusion as to what witnesses said before the Grand Jury, without setting forth any of the testimony on which his conclusion rests, is not sufficient. Where hearsay is relied on, it must be shown to come from a reliable source and must in and of itself be able to justify a finding of probable cause. (*People* v. *Hendricks,* 25 N Y 2d 129; *People* v. *Malinsky,* 15 N Y 2d 86, 93, 94; *People* v. *McCall,* 17 N Y 2d 152.) He completely fails to state the basis, nature or content of his claimed " personal knowledge ".

The affidavit at bar fails to meet the two-pronged test laid down in *Aguilar* v. *Texas* (378 U. S. 108) and more recently reaffirmed in *Spinelli* v. *United States* (393 U. S. 410) and most recently reaffirmed by the Court of Appeals in *People* v. *Hendricks* (25 N Y 2d 129, *supra*). In short that test requires that the affidavit show (1) whether the informant is in fact reliable, and (2) whether the underlying circumstances as to how the informant came by his information demonstrates sufficient probability of credibility to allow the search of the premises or person in question.

While we should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a common sense manner (*United States* v. *Ventresca*, 380 U. S. 102), the law is clear that the Magistrate must be informed of the underlying circumstances which support the conclusion and belief of the affiant that his informant was credible and his information reliable (*People* v. *Hendricks*, 25 N Y 2d, at p. 139).

In view of our ruling on the invalidity of the search warrant, we did not reach and, therefore, did not consider the other points raised by appellants. For the foregoing reasons, the judgments of conviction should be reversed, on the law, and a new trial ordered as to each appellant.

McNALLY, J. (dissenting). I dissent and vote to affirm.

The motion to vacate the search warrant is grounded solely on lack of probable cause. No issue of fact is involved. Hence, no hearing was necessary. (See Code Crim. Pro., § 813-c.)

The affidavit in support of the warrant which has been declared invalid is as follows:

" Joseph A. Phillips, being duly sworn, deposes and says:

" That I am the Assistant District Attorney in New York County charged with the responsibility of investigating to determine whether the crimes of bid rigging, bribery of public officers, bribery of labor representatives, extortion, assault, grand larceny and conspiracies to commit each of those crimes have been committed in relation to public contracts with the New York City Housing Authority; and as such I am familiar with the proceedings had heretofore in this investigation.

" That this affidavit is made in support of this office's request for court orders authorizing the search of the offices [of] fourteen separate painting contractors.

" That the contractors and their addresses are as follows:

" That your deponent has examined the New York City Housing Authority's bid records for painting contracts and each of the above-named contractors or their predecessors has been doing business with the Authority for a period of years.

" That the Authority's bid records also reflect the addresses of each of the itemized contractors.

" That the Fourth April 1965 and the Third March 1965 Grand Juries have been hearing testimony in relation to the above-mentioned crime since March of this year.

" That officers or owners of each of the above-mentioned contracting firms have been called before the Grand Jury and requested to sign waivers of immunity pursuant to Section 103b of the General Municipal Law.

" That with the exception of D. C. Decorating Corp. and Smith Decorating Corp. a principal of each of the contracting firms has refused to sign a waiver and each has had large painting contracts cancelled and has been disqualified from doing further business with the City.

" That, in addition, Eli Smith the President of Smith Decorating Corp. has been indicted by the Grand Jury for his failure to continue testifying under his waiver of immunity.

" That your deponent has been present at the proceedings of the Fourth April Grand Jury.

" That your deponent has heard the sworn testimony of a number of witnesses before the Fourth April Grand Jury who have stated that they were parties to an agreement to rig bids at the City Housing Authority.

" That the sworn testimony before that Jury further reveals that each of the above-named contracting firms has been identified as a party to the agreement to rig bids at the Housing Authority.

" That the sworn testimony before the Grand Jury also reflects that the Housing Authority has two employees who prepare estimates of the man-days that it should take to paint certain portions of Housing Authority projects.

" That the testimony further shows that the man-day estimates prepared are solely for the internal use of the Housing Authority in preparing its various financial statements and budgets.

" That a sample of the Housing Authority man-day estimate is annexed hereto as an exhibit.

" That the sworn testimony before the grand jury shows further that the parties to the bid rigging agreement were able to obtain the Housing Authority's estimate and that the parties utilized the information in the Housing Authority's estimate information to submit false bids to the Housing Authority.

" That the sworn testimony of a number of witnesses stated that Jerry Jerome, who is a convicted felon and the President

of Jered Contracting Corp., was the individual who obtained the Housing Authority estimate information and passed copies of that information on to the other parties to the agreement.

" That based upon the foregoing reliable information and upon my personal knowledge there is probable cause to believe that the estimate information has been wrongfully obtained from the Housing Authority, that it has been utilized by the parties to the agreement to submit false bids to the Housing Authority and that copies of the estimate information may be found in the files of each of the parties to the corrupt agreement at the addresses set forth above.

" WHEREFORE, I respectfully request that the court issue fourteen warrants and orders of seizure in the form annexed authorizing the search of each of the locations specified above and directing that if such property or evidence or any part thereof be found that it be seized and brought before the court, together with such other and further relief that the court may deem proper.

" No previous application in this matter has been made in this or any other court or to any other judge, justice or magistrate."

The basic principles applicable to search warrants are: (1) " in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall ". (*United States* v. *Ventresca*, 380 U. S. 102, 106; *People* v. *Schnitzler*, 18 N Y 2d 457); (2) probable cause requires less evidence than proof of guilt (*Ventresca*, 380 U. S., at p. 107); (3) probable cause may be based on evidence incompetent in a criminal trial (*supra*, p. 107; *People* v. *Rogers*, 15 N Y 2d 422); and (4) the facts and circumstances need only satisfy one of reasonable caution that the offense has been or will be committed (*Carroll* v. *United States*, 267 U. S. 132, 162; *Brinegar* v. *United States*, 338 U. S. 160, 176).

" The courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a common sense, manner." (*Ventresca*, *supra*, p. 109.)

The affidavit in support of the search warrant derives from sworn testimony before the Grand Jury and records of the New York City Housing Authority.

That appellants have been doing business with the Authority for a period of years as alleged in the supporting affidavit is not denied. Characterized as conclusory are the allegations therein that sworn testimony before the Grand Jury is that appellants " were parties to an agreement to rig bids at the

City Housing Authority ", that each appellant " has been identified as a party to the agreement to rig bids at the Housing Authority "; that " parties to the bid rigging agreement were able to obtain the Housing Authority's estimate and that the parties utilized the information in the Housing Authority's estimate information to submit false bids to the Housing Authority "; and that " witnesses stated that Jerry Jerome, who is a convicted felon and the President of Jered Contracting Corp. was the individual who obtained the Housing Authority estimate information and passed copies of that information on to the other parties to the agreement."

*People* v. *Hendricks* (25 N Y 2d 129) was an informer case. (See, also, *Aguilar* v. *Texas*, 278 U. S. 108, and *Spinelli* v. *United States*, 393 U. S. 410.) The courts have treated informer cases in substantially the same manner. (*Draper* v. *United States*, 358 U. S. 307; *Jones* v. *United States*, 362 U. S. 257; *People* v. *Munger*, 24 N Y 2d 445; *People* v. *Cerrato*, 24 N Y 2d 1; *People* v. *Montague*, 19 N Y 2d 121; *People* v. *Schnitzler*, 18 N Y 2d 457, *supra*; *People* v. *Malinsky*, 15 N Y 2d 86; *People* v. *Coffey*, 12 N Y 2d 443.) The informer gives oral information to a law enforcement officer. The informer is not required to take an oath. The details of his information are not recorded. His identity may not be disclosed. He does not appear as a witness.

The identities of the witnesses and their testimony were disclosed on the trial of this case. In deciding *Hendricks* (*supra*, p. 133) the Court of Appeals held: " In short that test requires that the affidavit show (1) whether the informant is in fact reliable, and (2) whether the underlying circumstances as to how the informant came by his information demonstrates sufficient probability of credibility to allow the search of the premises or person in question." A reading of the affidavit demonstrates that it meets the strictest of tests, even if it be assumed that the test in the instant case is that applied to an informer case.

Grand Jury testimony is not analogous to the unsworn statements of informers. Testimony under oath is *prima facie* credible. Hence, there need be no independent evidence of reliability in respect of testimony before a Grand Jury. The informer cases are inapplicable.

In the instant case, the search warrant issued on probable cause. The Assistant District Attorney in New York County charged with investigating to determine whether the crimes of bid rigging and related crimes were committed in relation to public contracts with the New York City Housing Authority submitted his affidavit based on sworn testimony in his presence

before the Grand Jury. "The Grand Jury can receive none but legal evidence." (Code Crim. Pro., § 249.) The evidence before the Grand Jury, therefore, was not hearsay. The Assistant District Attorney stated under oath that the testimony was to the effect that Jerry Jerome obtained Housing Authority estimate information and passed copies on to the parties to the agreement. In addition, his affidavit stated the appellants were identified as parties to the agreement.

Probable cause is not circumscribed by the rules of evidence applicable to a criminal trial. Rigid adherence to the technical rules of evidence has no place in the area of search and seizure where a common-sense and realistic appraisal supports the issuance of the warrant. (*Ventresca*, 380 U. S. 102, 108, *supra*.) The issuing Justice, in the light of the "underlying circumstances" (*Aguilar* v. *Texas*, 278 U. S. 108, 114, *supra*), properly decided there was probable cause for the warrant. If this is a doubtful case, which it is not, we should sustain the warrant (p. 106).

Appellants' contention that the affidavit in support of the warrant is silent on the likelihood of the records to be searched for will be at the offices of appellants is without substance. There was substantial basis that the records sought probably would be at the offices of the corporations named. (*People* v. *Montague*, 19 N Y 2d 121, 125, *supra*.) The affidavit is detailed and precise and has no element of rumor connected with it. It describes in detail the number of conspirators, their method of operation, names the ringleader, traces the source of the Housing Authority estimate to the ringleader, and his distribution of the estimate to the other conspirators.

From the foregoing, I conclude that the search warrant in this case conforms not only to the general principles applicable to all search warrants but more particularly to the test set forth in *Hendricks* (25 N Y 2d 129, *supra*).

EAGER, J. P., CAPOZZOLI and NUNEZ, JJ., concur in *Per Curiam* opinion; McNALLY, J., dissents in opinion in which TILZER, J., concurs.

Judgment reversed, on the law, and a new trial ordered as to each appellant. The search warrant issued June 15, 1965, is vacated and the evidence seized upon its execution is suppressed.