Mary Makoske et al., Plaintiffs, v Ralph J. Lombardy, Defendant; John W. Trolenberg, Defendant and Third-Party Plaintiff-Respondent; Montgomery Ward & Co., Inc., Third-Party Defendant-Appellant.

Third Department, April 17, 1975

*Miner & Miner* for plaintiffs.

*Ainsworth, Sullivan, Tracy & Knauf (John E. Knauf* of counsel), for third-party defendant-appellant.

*Hesson, Ford, Grogan, Sherwood & Whalen (Thomas A. Ford* of counsel), for defendant and third-party plaintiff-respondent.

*St. John, Ronder & Bell* for Ralph J. Lombardy, defendant.

KANE, J. Plaintiff Mary Makoske* seeks to recover damages for personal injuries sustained while she was riding as a passenger in an automobile owned and operated by the defendant Ralph J. Lombardy when it collided with a vehicle owned and operated by the defendant and third-party plaintiff John W. Trolenberg who, in turn, seeks apportionment of any damages recovered against him from the third-party defendant Montgomery Ward, the employer of the other parties, as well as from the defendant Lombardy by way of a cross claim.

Following extensive examinations before trial, defendant Lombardy moved for summary judgment upon the ground that, since he and the plaintiff were coemployees acting in the course of their employment at the time of the accident, plaintiff's exclusive remedy was under the provisions of the Workmen's Compensation Law. Third-party defendant Montgomery Ward cross-moved for summary judgment dismissing the third-party complaint of Trolenberg upon the ground that its employees in the Lombardy vehicle were *not* acting within the scope of their employment at the time of the collision and, consequently, that it could not be found liable under the doctrine of *respondeat superior.* Special Term denied both motions, but only Montgomery Ward appeals from the order thereupon entered. Therefore, the sole issue on this appeal is whether it can be said, as a matter of law, that defendant Lombardy was *not* engaged in activity within the scope of his employment with Montgomery Ward at the time of the accident. A recitation of the salient facts is obviously required.

The defendant Lombardy's vehicle contained four other passengers, in addition to the plaintiff, at the time of the

---

* Plaintiff Mary Makoske's husband also brings a derivative action, but all references herein to "plaintiff" refer only to Mary Makoske.

accident. All were employees of appellant Montgomery Ward. They were in Saratoga attending a course of instruction on the duties of a catalog store manager which was conducted by the plaintiff at a Saratoga training school designated by the company, and all trainees were required to stay at a local motel. Lodging and meal expenses were paid by appellant. Certain store managers, including defendant Lombardy, were requested by the employer to drive their personal automobiles to the training session and pick up other employees along the way. Mileage and tolls were also paid by the company. The drivers were not restricted in the use of their automobiles and, in fact, were the sole source of transportation in and around Saratoga for their various colleagues. Admittedly, this was a very common company practice.

After dinner on the evening of July 22, 1970, the last full day of the training session, a group of trainees, together with plaintiff, was discussing the day's program when one of the individuals present mentioned she regretted coming to Saratoga without seeing the raceway. Some of this group, including plaintiff, decided to take a few minutes to drive out to look at the track and then return to the motel. The company did not prohibit its employees from sightseeing, nor were restrictions placed upon their evening activities. Since defendant Lombardy was among those interested, it was his automobile that was selected for use and thus it came to the scene of the accident enroute to the track.

The critical question is whether or not Lombardy's trip to visit the raceway was within the scope of his employment so as to bind his employer, Montgomery Ward, for any subsequent negligent act on his part. Whether an employee's acts can be considered in the scope of employment depends upon the particular facts of each case and a difference in degree will produce different results. Ultimately, "the answer depends upon a consideration of what the servant was doing, and why, when, where and how he was doing it." *(Riley v Standard Oil of N. Y.,* 231 NY 301, 304.) Added to this consideration of *respondeat superior* is the further requirement that the employer "is, or could be exercising some control, directly or indirectly, over the employee's activities" *(Lundberg v State of New York,* 25 NY2d 467, 470). In the instant case, it seems clear that Montgomery Ward had limited the mobility of its employees by marooning them in a motel at Saratoga, a resort community, for four days and

nights without a readily available means of transportation other than that which could be provided by coemployees. It would certainly seem reasonable to expect that these employees would go out to dinner in the immediate area and visit some local landmarks in the time allotted for such activities. In any event, restrictions upon such activities could have been imposed by Montgomery Ward, at least to the extent of the minimum control requirement contemplated by *Lundberg*. Whether the activities of these employees were in furtherance of their employer's interest, or merely a deviation from the scope of employment for purely personal reasons, requires a close examination of the facts and controlling case law.

The furtherance of interest question often turns on a decision of whether the employee's activity is incidental to the employer's business or is wholly separate and apart from it (cf. *Bluestein v Scoparino,* 277 App Div 534; *Wood v Saunders,* 228 App Div 69). If there is a departure from specific or designated activity, consideration must then be given to the foreseeability of the occurrence arising from the particular deviation to determine whether it could be fairly considered a related risk *(Bushey & Sons v United States,* 398 F2d 167). It seems clear that employer responsibility in this area is broad, particularly where employee activity may be regarded as *incidental to the furtherance of the employer's interest* for, so long as the other requirements are present, "Liability is the rule, immunity the exception" *(Bing v Thunig,* 2 NY2d 656, 666; *Burns v City of New York,* 6 AD2d 30). Accordingly, on the present posture of the record, Special Term properly denied the motion to dismiss the third-party complaint.

The order should be affirmed, without costs.

HERLIHY, P. J. (concurring). While I concur in the majority decision, I would make the following observation.

It is not disputed that the Lombardy car was used for transportation to the Saratoga meeting place at the specific insistence of his employer. In this regard, the use of the automobile and its attribution to the employer is vastly different from the situation which was disclosed in the case of *Lundberg v State of New York* (25 NY2d 467). It should be further noted that the *Lundberg* decision was an appeal from a judgment after trial. The present record does not clearly establish the inapplicability of the doctrine of *respondeat*

*superior* and, accordingly, the trial court properly denied the appellant's motion for summary judgment.

GREENBLOTT, J. (dissenting). I dissent. While the facts as set forth in the majority opinion are generally accurate, I do not find warrant for the statement that "the drivers * * * were the sole source of transportation in * * * Saratoga" since it is beyond dispute that public transportation at least in the form of taxicabs is available in Saratoga Springs. Thus, Montgomery's employees could not have been regarded as "marooned".

I am of the opinion that there are no *genuine* issues of fact, and that, as a matter of law, Montgomery Ward did not have such control of the nonbusiness activities of its employees so as to invoke the doctrine of *respondeat superior.* The scope of that doctrine is set forth in *Lundberg v State of New York* (25 NY2d 467). Under that doctrine, an employer can be held responsible for the negligent acts of an employee committed while the latter is acting in the scope of his employment. "An employee acts in the scope of his employment when he is doing something in furtherance of the duties he owes to his employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities" (25 NY2d, at p 470). "Scope of employment" for purposes of this test, moreover, is narrower than the "course of employment" test in workmen's compensation cases (see 25 NY2d, at p 472).

Here, the examinations before trial reveal that Lombardy, like most of the others, was there to be trained—he was not in any supervisory position vis-à-vis other trainees. His car was used because it was the only one available, but he had not been instructed or even requested to provide local transportation for his colleagues while they were in the Saratoga area. On the night of the accident, the plaintiff had not eaten dinner with the people who were in the car at the time of the accident, so it could not be found that there was any program of planned social activities in which all employees were required or expected to participate. In fact, plaintiff had initially declined an invitation to go to the raceway, but agreed to go only when she was promised that she would be returned to the motel in 15 minutes. The trip seems to have been a spontaneous suggestion by a cotrainee other than defendant Lombardy. Nothing else in the examinations, affidavits or pleadings points to any evidence which could establish any facts other than that the trip was personally motivated, was

not required by the employment or in furtherance thereof, or subject to the employer's control. The court is not obliged "to ferret out speculative issues 'to get the case to the jury' where the trial may disclose something the pretrial proceedings have not" *(Andre v Pomeroy,* 35 NY2d 361, 364).

Analyzing the undisputed facts in light of controlling case law, there is no basis upon which it could be concluded, for purposes of the doctrine of *respondeat superior,* that Lombardy was in the scope of his employment or was subject to the control of Montgomery. In *Lundberg,* one Sandilands, an engineer who was permanently based and resided in Buffalo, was temporarily assigned to a project in Salamanca, about 80 miles away. Sandilands stayed in a hotel in Salamanca, during the work week, and would drive home on weekends. He was reimbursed for his living expenses while away from home, and for his travel expenses at the rate of nine cents a mile. On a Monday morning, while driving to Salamanca from Buffalo, he was involved in an auto accident. A judgment against his employer based on Sandilands' negligence in causing the death of another was reversed. It was the opinion of the Court of Appeals that in driving from Buffalo to his work site, he was not in the scope of his employment. Since Sandilands was as free to do as he wished on weekends, as were the employees in the present case with their time not spent in training sessions, he "was not driving his car in furtherance of his work at the time of the accident * * * [and thus] was engaged in an independent personal activity over which the [employer] had no control" (25 NY2d, at p 471). An argument that the driving by Sandilands was done to fulfill an obligation to the employer, and thus was necessitated by the employment, was rejected. In light of this, it seems to me inescapable to conclude that the recreational trip in the case at bar was certainly no more the creation of the employment than Sandilands' trip in *Lundberg.* To paraphrase that case, Lombardy "was not driving to satisfy an obligation he owed to his employer but solely to satisfy his personal desire to visit [the raceway]; * * * [Montgomery] clearly did not have the power to control [Lombardy's] activities after the close of [the training sessions] * * *. During these hours, [Lombardy] was free to do as he pleased * * *. [T]he mere fact that [Montgomery] had agreed to pay * * * a mileage allowance, did not bestow in it any right of control. To hold that by simply paying his travel expenses * * * [Montgomery] opened itself

to liability for any tortious act he might commit while traveling * * * would be patently unfair and beyond the scope of the doctrine of *respondeat superior"* (25 NY2d, at pp 471–472).

Nor can it be successfully urged that Montgomery should have foreseen that its employees would engage in reasonable recreational activities and therefore should be responsible for injuries arising therefrom. While an employer may have an interest in the "good health and spirits of its employees", personal outings do not thereby become the employer's business *(Stenzler v Standard Gas Light Co. of City of N.Y.,* 179 App Div 774, 776, affd 226 NY 681). While a different rule pertains in compensation cases, the distinction is a sound one. Compensation liability is not based on fault, wherefore such liability arises from the relatively passive act of placing an employee in a situation where injury is not totally removed from the course of employment. *Respondeat superior,* on the other hand, is founded upon a negligent act causing injury to a third person. In this case, if Trolenberg and Lombardy were both to be found negligent, *respondeat superior* could only be invoked for any contribution owing from Lombard to Trolenberg under *Dole v Dow Chem. Co.* (30 NY2d 143). Before an employer can fairly be held to account for such injury to a third person, it is only fair to require that the activity be necessary to the employer's business so that the employer may have an opportunity to exercise control. To subject Montgomery Ward to liability in the circumstances of the present case would establish a limitless doctrine of enterprise liability which we must decline to do. For these reasons, I would dismiss the claim against Montgomery Ward.

SWEENEY and MAIN, JJ., concur with KANE, J.; HERLIHY, P. J., concurs in a separate opinion; GREENBLOTT, J., dissents and votes to dismiss in an opinion.

Order affirmed, without costs.