OPINION OF THE COURT
David 0. Boehm, J.
This case presents a question of apparent first impression. Neither the citations furnished by counsel nor the court’s own research of the case law in this State and outside of the State have furnished any available precedent within the peculiar factual pattern of this case.
The facts are not complex. This is an action for personal injuries sustained by the plaintiff resulting from an accident involving an automobile owned by defendant, Violet C. Farley, and operated by defendant, Victor F. Farley. The plaintiff has also sued defendant, Xerox Corporation, Victor’s employer. The present motion is brought by Xerox to dismiss the complaint of the plaintiff and a cross claim of defendants Farley pursuant to CPLR 3211 and for summary judgment pursuant to CPLR 3212. A *594 cross motion is brought by plaintiff for summary judgment in her favor against defendants Farley.
On October 29, 1979, Victor Farley was enrolled as a student at Rochester Institute of Technology pursuant to an arrangement with his employer, Xerox Corporation, whereby Xerox funded the tuition pursuant to its national tuition aid program. According to John Delaney, manager of personnel policies and practices, a portion of whose deposition is included in the plaintiff’s moving papers, approximately 6,000 employees of Xerox in the United States have taken advantage of the tuition aid program which involves an annual outlay of approximately $1,000,000.
The Xerox personnel policy manual, a copy of which is included as an exhibit in the plaintiff’s papers, sets forth certain restrictions in the program. Among others, they are that tuition aid applications must be approved by the immediate supervisor; tuition is provided only for those courses directly related to a present job or to a future job to which an employee may reasonably aspire; and tuition assistance is not provided for courses of an avocation, hobby or recreational nature only. Upon approval of the application, Xerox advances 100% of the tuition and lab fees and then deducts 35% thereof from the employee’s paychecks in installments, as his own responsibility for tuition. Thereafter, employees taking such outside educational programs are required to submit itemized receipts from the college or university verifying enrollment. In addition, employees are required to submit copies of grade reports as proof of successful completion within 30 days after completion. If grade reports are not submitted within 50 days after a semester is ended, recovery of the 65% “deferred loan” is initiated. The program also provides for an employee to recover the 35% he has paid back to Xerox upon the submission of certain documents, including a transcript of grades and proof that all degree requirements have been successfully completed.
The program permits an employee pursuing advanced degrees in his present field of work who is unable to schedule classes outside of working hours to have limited time off during the workday to attend classes, subject to approval *595 of the employee’s manager, the time to be made up at the manager’s discretion. However, it is not essential to the program that the employee study in a classroom; independent courses or programs may also be approved. In the event an employee fails to successfully complete his course “for personal reasons”, the total tuition is collected back from the employee by extended payroll deductions. In addition, upon termination, the tuition assistance is immediately canceled and the employee is expected to reimburse Xerox up to 100% of the tuition and fees.
The foregoing generally sets forth the highlights of the program in which Victor Farley was enrolled. In his approved tuition application he had stated that the linear systems course he wished to enroll in “would lay the foundation for my future matriculation to the engineering master’s program.” His application was approved by his manager on January 27, 1977, and by the tuition aid co-ordinator on January 31,1977, and it may be assumed that the tuition of $392 was thereafter advanced by Xerox. At that time Victor had a Bachelor of Science degree and would now be working toward a master’s degree.
The accident occurred at approximately 4:55 P.M. on October 29, 1979 at the intersection of two roads on the Rochester Institute of Technology campus in Henrietta while Victor was driving to class from work. According to his deposition, a portion of which is also annexed to the plaintiff’s moving papers, Victor’s class started at 4:20 P.M. He testified that he normally got out of work at 4:20 or 4:30 P.M. and was usually a few minutes late for class.
By virtue of the financial sponsorship of Victor’s education and the fact that he was driving to class at the time of the accident, it is the plaintiff’s position that Victor was operating his automobile at that time in the scope of his employment and, therefore, if Victor is held liable Xerox would also be liable pursuant to the doctrine of respondeat superior.
In its motion to dismiss the complaint, Xerox contends that its tuition aid program is completely voluntary and that no employee is required to pursue outside education in order to retain his current position or as a requirement *596 for advancement. This is not denied except for a statement by Victor that he was told when originally interviewing for the job with Xerox that it was an advantage to have a master’s degree. The affidavit of John Delaney annexed to the Xerox motion papers emphasizes that Xerox exercises no control over the employee’s choice of an educational institution nor over an employee’s transportation to and from courses; further that the time spent by an employee in class or while driving to class is not compensated for. It is also pointed out that an employee must schedule outside educational courses in nonworking hours unless the course cannot be so scheduled, in which case any time taken off for attendance must be made up at the discretion of the employee’s manager. None of this is disputed either.
Unfortunately, there is no neat and precise formula by which to resolve the question of an employee’s status at the time he is involved in an accident. Each case must be decided largely on its own facts, keeping in mind the basic rule that for respondeat superior to apply the employee must have then been in the service of his master or while about his business and in some fashion furthering the business interests of his employer. In addition, it is required that the employer was, or could have been, exercising some control, directly or indirectly, over the employee’s activity (Lundberg v State of New York, 25 NY2d 467, 470).
Although whether an employee was acting in the scope of his employment is ordinarily a question for the jury where the evidence is conflicting, the question becomes one for the court to resolve where there is no conflict as to the essential facts (Riley v Standard Oil Co. of N.Y., 231 NY 301; Kelleher v State Mut. Life Assur. Co. of Amer., 51 AD2d 872).
Here the essential facts are undisputed. The accident occurred when Victor Farley was on his way to class, the cost of which was subsidized by his employer’s tuition aid program. The requirements and elements of that program as set forth above and that an employee is not compensated for the hours he spends in class, preparing homework or studying for examinations are similarly not disputed. And it is conceded that a successful student is reimbursed the *597 35% of the tuition which he paid but that one who fails to complete the course successfully is not reimbursed and in addition is responsible to repay Xerox for the other 65% of the tuition.
Although Xerox subsidizes the outside education of an employee who successfully completes course work for a degree, this alone should not be controlling in creating a “scope of employment” status, at least while the course is still in progress, because failure to complete the course would make the employee responsible to pay the entire tuition. Thus, if tuition payments alone were the criterion by which scope of employment was determined, one would not know whether or not an employee was within the scope of his employment during the course year until his work had been graded at the end of the school year. Until that time an employee’s status would be a contingent one, ripening only after the grades were issued. If, in the meantime, the employee had an accident driving to or from class, Xerox would not know whether it could be held responsible as his employer until the employee had passed or flunked.
Further, the purpose of Victor Farley in working toward, a master’s degree was predominantly personal. Although it may also serve a purpose of Xerox to have its employees better trained or more satisfied on the job by being promoted from within the organization, this purpose is subservient to the personal motive of Victor to better his own employment and economic status by obtaining a master’s degree, a degree which would remain his and continue to benefit him even if he should no longer work for Xerox. Indeed, the tuition aid program provides that reimbursement for certain courses is taxable income to the employee and appropriate income tax withholding is made therefor.
No doubt there is a good business and policy reason for Xerox to subsidize the education of its employees within certain areas of value to Xerox, but it cannot be said that such a purpose is necessary or vital to its operation except insofar as ambitious, well-trained or satisfied employees are vital to any organization in the same way as healthy employees are.
It has been said that acts for the personal convenience of an employee and merely permitted by the employer to *598 make the employment more desirable are not within the scope of employment (Restatement, Agency 2d, § 229, Comment c; see, also, Stenzler v Standard Gas Light Co. of City of N. Y., 179 App Div 774, affd 226 NY 681). That the doctrine of respondeat superior should apply because an activity benefiting an employee personally could also have a possible benefit to the employer was, without more, rejected by the Fourth Department as “unpersuasive” (Ehlenfield v State of New York, 62 AD2d 1151).
In addition, employees with desirable educational qualifications are surely available from the open job market; people with the skills, education and training desired by Xerox are not the exclusive product of its work-related education or training.
Further, it is undisputed that Xerox does not direct the number of times an employee must attend class nor whether he must attend at all. Hypothetically, if an employee were able to successfully complete a course by home study and never attend class, Xerox would still be obligated for 100% of the tuition. It is not going to and from class which determines whether an employee is reimbursed; it is whether he successfully completes his educational course.
If Xerox could be held liable in this case under respondeat superior, other circumstances come to mind which would also appear to impose liability upon it. For example, if Victor Farley carelessly handled volatile materials in a chemistry class and another student were injured or property were destroyed, Xerox could be held responsible. If Xerox is responsible for what an employee does on his way to class, why would it not be equally responsible for what an employee does in class? Or, if educational sabbaticals funded by scholarship grants under the same aid program were encouraged by Xerox, it could be responsible for injuries caused by one of its employees during such a sabbatical driving to or from class at a university hundreds of miles away from the plant. Or, if Xerox encouraged its employees to take paid leaves of absence to participate in worthwhile community organizations or projects, it could be responsible for injuries caused by an employee while so participating.
Other areas of liability come to mind. If Xerox en *599 couraged noontime physical activity by its employees, such as jogging, would it be responsible for an injury caused to a pedestrian by one of its jogging employees in the area around Xerox Square? More examples could be cited but these are sufficient to make the point.
It is submitted that in none of these examples would an employee be acting in the scope of his employment as that term has been historically understood. Scope of employment “refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment.” (Prosser, Law of Torts [4th ed], pp 460-461).
The Restatement sets forth the requirements as follows: “(1) Conduct of a servant is within the scope of employment if, but only if:
“(a) it is of the kind he is employed to perform;
“(b) it occurs substantially within the authorized time and space limits;
“(c) it is actuated, at least in part, by a purpose to serve the master * * *
“(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.” (Restatement, Agency 2d, § 228.)
Victor’s activity at the time of the accident in driving to a course whose successful completion was of primary and direct benefit to him cannot be said to be in the scope of his employment. Taking the course was not “closely connected” with what he had been employed to do nor was it “fairly and reasonably incidental” to the carrying out of the objectives of his employment. It was “too little actuated by a purpose to serve the master”; his own purpose was clearly the prevailing one. Nor was Xerox exercising control over him, directly or indirectly, at the time. He was driving a car not owned by Xerox; he selected his own mode of transportation; he chose the course which he was attending, but he could have gone or not gone as he saw fit and if he failed to attend class after enrolling the jeop *600 ardy he suffered was not his job but only the tuition Xerox had advanced on his behalf. It is difficult to see how Xerox was in control or could have been in control of Victor when the accident happened.
The case of Makoske v Lombardy (47 AD2d 284) is not to the contrary for there the employees were required to attend the training session at Saratoga. They were obliged to go. They did not have the same option which Victor had.
This is not to say that because Xerox is not responsible to the plaintiff that Victor would not be eligible for workers’ compensation benefits. To obtain compensation benefits all that an employee need do is establish that his injury was caused by an activity related to his job. However, respondeat superior mandates that the employee be either under the control of the employer at the time of the injury or that he could have been (Lundberg v State of New York, 25 NY2d 467, supra). Whereas qualifying for workers’ compensation benefits requires only that the injury occur out of and in the course of employment, recovery under the doctrine of respondeat superior necessitates that the employee be acting in the scope of his employment, a much narrower test (Makoske v Lombardy, 47 AD2d 284, 289 [Greenblatt, J., dissenting], supra). However, it is not necessary to reach or resolve this question now.
The plaintiff’s cross motion for summary judgment must be denied. Her deposition indicates that although it was starting to get dark at the time of the accident, she could not recall whether or not her car lights were on. In addition, she admitted that she did not see the Farley vehicle before the accident. In this day of comparative negligence, it cannot be said that the issue of the plaintiff’s liability or the percentage thereof is so clear cut that there is not even a question as to whether she acted reasonably under the circumstances (Ugarriza v Schmieder, 46 NY2d 471, 475).
The motion of defendant Xerox Corporation is granted in all respects and the cross motion of the plaintiff is denied.