438 So.2d 116 (1983)
SAUDI ARABIAN AIRLINES CORPORATION, and Iowa National Mutual Insurance Company, Appellants,
v.
Thomas Harrison DUNN, Jr., et al., Appellees.
No. AO-97.
District Court of Appeal of Florida, First District.
September 14, 1983.
Rehearings Denied October 6, 1983.
*117 Julian Clarkson, Holland & Knight, Tallahassee, James M. McLean, Rogers, Towers, Bailey, Jones & Gay, Jacksonville, for appellant Saudi Arabian Airlines Corp.
John I. Todd, Jr., Jacksonville, for appellant Iowa Nat. Mut. Ins. Co.
William G. Gentry and C. Rufus Pennington, III, Bedell, Bedell, Dittmar & Zehmer, Jacksonville, for appellee.
LARRY G. SMITH, Judge.
This is an appeal from a judgment entered after a jury trial in a negligence action. Appellant-defendant Saudi Arabian Airlines (Saudi) was found liable for damages for injuries sustained by appellee-plaintiff, *118 Thomas H. Dunn, Jr., caused by the negligent operation of an automobile driven by Saudi's employee, Hazza Saud Al-Faqeer. Saudi relies for reversal primarily upon its contention that the evidence is insufficient to support a jury finding that Al-Faqeer was its agent or employee, or, alternatively, that he was not acting within the scope of his agency or employment at the time of the accident. Saudi also asserts that it was error to allow the plaintiff to use Al-Faqeer's deposition, taken at a time when Saudi was not a party in the litigation, to prove his employee status. Iowa National Mutual Insurance Company (Iowa), Dunn's underinsured motorist insurer, cross-appeals the final judgment entered against it. We affirm as to the appeal and the cross-appeal.
Al-Faqeer was brought to the United States by Saudi to learn English and go to technical training school. Saudi enrolled Al-Faqeer in a special English language institute, which leased classroom and office space from the University of North Florida in Jacksonville and which was operated by Systran Corporation, under a contract with the airlines. While Al-Faqeer was going to school, Saudi paid for his tuition and books and gave him $650.00 a month toward housing and food. Saudi monitored Al-Faqeer's academic progress and prohibited him as a Saudi technical trainee from taking any kind of flight training. After his training, Al-Faqeer planned to work for Saudi.
On the afternoon of October 10, 1979, Al-Faqeer, who did not have a valid United States or Florida drivers license, drove the car of his cousin, Abdullah Ali Shihry, from school to an Albertsons store to buy some groceries. When driving back to the school, he lost control of the car going through a Jacksonville intersection, sent the car airborne, and landed on top of Dunn's car, causing Dunn to suffer severe head injuries.
Dunn filed a complaint against Shihry and Al-Faqeer. Two months later, Dunn's counsel took Al-Faqeer's deposition, at which time it was learned that Al-Faqeer was a Saudi Arabian citizen in the United States pursuant to a technical training program of the airlines. Seven months later, Dunn amended his complaint to name Saudi as a defendant under the doctrine of respondeat superior. At the same time he added Allstate Insurance Company, Shihry's liability insurer, as a defendant. Later, when the second amended complaint was filed, Iowa was added as a defendant.
Saudi filed a motion to abate for lack of jurisdiction and a motion to dismiss for failure to state a cause of action, both of which were denied. Saudi appealed the denial of the motion to abate relying on Al-Faqeer's deposition as support for its position that as a matter of law there could be no liability under the doctrine of respondeat superior since Al-Faqeer was not acting within the course and scope of his employment at the time of the accident but was instead either "coming and going" to work or deviating from his employment. This court found that "the allegations of the amended complaint were clearly sufficient to charge appellant with legal responsibility for its alleged employee's wrongful act while acting within the course and scope of his employment" and that Saudi's "motion to abate for the lack of personal service, supported as it was by Al-Faqeer's deposition, failed to make a prima facie showing that Al-Faqeer was not acting within the course and scope of his employment at the time of the accident" and accordingly affirmed the trial court's denial of the motion to abate. Saudi Arabian Airlines Corp. v. Dunn, 395 So.2d 1295, 1296 (Fla. 1st DCA 1981).[1]
*119 Subsequently Al-Faqeer was terminated from Saudi because he was unreliable and was returned to Saudi Arabia.
At the trial, over Saudi's objection, Dunn was permitted to read excerpts of Al-Faqeer's deposition to the jury. At the conclusion of the trial, the jury returned a verdict in favor of Dunn and awarded damages in the amount of $325,000.00.[2] The trial court entered final judgment against all defendants in this amount. Iowa filed a motion requesting the court to amend the final judgment to reflect that Iowa would not be liable to Dunn since Dunn had made a full recovery in the amount of his damages against Saudi. The trial court denied Iowa's motion to amend the final judgment and motion to tax costs and entered an amended final judgment limiting the recovery against Allstate to $10,000.00, and the recovery from Iowa to $90,000.00.[3]
Initially, appellant complains that the trial court erred in permitting excerpts of Al-Faqeer's deposition to be introduced against it because it was not a party at the time the deposition was taken. Brown v. Tanner, 164 So.2d 848 (Fla. 1st DCA 1964). Saudi contends this constituted reversible error since these excerpts were the sole testimony introduced by Dunn's counsel at trial to show that Al-Faqeer was at school on the day of the accident, that he had been buying groceries just prior to the accident and that he had been returning to school at the time of the accident, facts which are crucial to Dunn's contention that Al-Faqeer was acting within the scope of his employment.
However, Saudi's argument ignores the admissibility of Al-Faqeer's deposition testimony as one of the exceptions to the hearsay rule under Section 90.803, Florida Evidence Code, Florida Statutes (1981). A statement offered as an admission against a party of which he has manifested his adoption or belief in its truth is admissible. Section 90.803(18)(b). In its previous interlocutory appeal from the trial court's order denying the motion to abate, Saudi relied on Al-Faqeer's deposition testimony as support for its position that Al-Faqeer was not acting in the course and scope of his employment at the time of the accident. Subsequent to that unsuccessful appeal, Saudi again adopted Al-Faqeer's deposition testimony by asserting it as a basis for its motion for summary judgment. Under the circumstances, Saudi's conduct amounted to an "adoptive admission" of Al-Faqeer's deposition testimony which the trial court correctly permitted to be introduced as evidence in the trial below. Dinter v. Brewer, 420 So.2d 932 (Fla. 3rd DCA 1982). Brown v. Tanner, relied upon by Saudi, does not dictate a contrary result since it did not involve consideration of other independent evidentiary grounds for admitting the deposition.
Recognizing that the existence of an employer-employee relationship is normally one for the jury, Saudi nevertheless contends that it was entitled to a judgment n.o.v. on this issue since as a matter of law, Al-Faqeer could not have been an agent or employee of Saudi. Al-Faqeer, Saudi argues, was not an employee, he was merely a student with a prospect of employment with Saudi if he successfully completed his school work. Saudi admits Al-Faqeer was paid a stipend and clothing allowance to cover his normal living expenses but points out that this was not subject to withholding tax. Further, Al-Faqeer did not have a payroll number, a date of hire, or a seniority date with Saudi. Saudi analogizes this case to the situation presented in Donovan *120 v. American Airlines, 686 F.2d 267 (5th Cir.1982). There, the Secretary of Labor sought to require American Airlines to pay the minimum wage to flight attendants and reservation agent trainees on the grounds that they were "employees." The court determined that the provisions of the Fair Labor Standards Act did not apply to these airline trainees while in training. In so ruling, the court was guided to a great extent by criteria formulated by the wage and hour administrator which provide for an analysis based upon the benefits derived by the trainee as compared to the benefits or detriments to the employer who provides the training[4]. If all six criteria are met, there is no employment relationship under the act. Donovan, at 273.
On the other hand, to determine whether an employer-employee relationship exists in this case, we must look to the law of master and servant.[5] At common law, four elements were considered in making a determination whether a master and servant relationship exists  the selection and engagement of the servant, the payment of wages, the power of dismissal, and the control of the servant's conduct  the essential element being the right of control and the right to direct the manner in which the work shall be done, the payment of wages being the least important factor. When the element of control is present, the absence of monetary consideration does not preclude the existence of the master-servant, employer-employee relationship. In Re Read's Petition, 224 F. Supp. 241 (D.C.S.D.Fla., 1963); 2 Fla.Jur.2d "Agency and Employment," § 121, pp. 297-298. In City of Boca Raton v. Mattef, 91 So.2d 644 (Fla. 1956), the Supreme Court described an employer-employee relationship thusly:
An employee is one who for consideration agrees to work subject to the orders and directions of another, usually for regular wages but not necessarily so, and, further, agrees to subject himself at all times during the period of service to the lawful orders and directions of the other in respect to the work to be done. Customarily, the employer determines both the method and manner in which the work is to be done as well as the time and tenure of the service. [citations omitted]
City of Boca Raton v. Mattef, 91 So.2d at 647.
It is readily apparent that the focus of the test for an employer-employee relationship under the law of master and servant is different than under the Fair Labor Standards Act. In determining an employer-employee relationship under the Act, the primary emphasis is upon the relative benefits flowing to the trainee and the employer, Donovan, supra at 271, whereas in this instance the ultimate test of the nature of the relationship is the presence of the right of control over the employee and the performance of his work.[6]City of Boca Raton, supra at 647.
*121 Examining the record with this in mind, we find evidence that Saudi was Al-Faqeer's visa sponsor, and that it directed which school Al-Faqeer would attend as well as Al-Faqeer's course of study. While in school, Saudi closely monitored Al-Faqeer's progress and in fact took a video tape of his behavior in the classroom. The airlines sought to restrict Al-Faqeer's out-of-class activities by prohibiting flight instruction and attempting (unsuccessfully in this case) to restrict his operation of motor vehicles. Al-Faqeer was given consideration by the airlines in the form of paid tuition and books, medical care costs, international travel expenses, and $675.00 a month toward room and board. Further, Saudi provided a "Ramadan" bonus to assist Al-Faqeer in the purchase of special foods during the time of Ramadan, extending over a period of several weeks, when there is extensive fasting. Saudi had the right to terminate Al-Faqeer and did in fact terminate him and return him to Saudi Arabia. Under the circumstances, there was sufficient evidence to submit the question of an existence of an employment relationship to the jury. Postal Telegraph and Cable Company v. Doyle, 123 Fla. 695, 167 So. 358 (1936), modified, 128 Fla. 707, 175 So. 515 (1937); Gordils v. DeVilliers, 402 So.2d 1313 (Fla. 4th DCA 1981); Lloyd v. Powell Bros., Inc., 382 So.2d 1374 (Fla. 4th DCA 1980), rev. denied, 392 So.2d 1376 (Fla. 1980).[7]
Next, appellant contends that even if Al-Faqeer were an employee of Saudi, he was not acting within the scope of that employment at the time of the accident. Appellant primarily relies on the New York case of Dinkins v. Farley, 106 Misc.2d 593, 434 N.Y.S.2d 325 (Sup.Ct.Monroe Cty. 1980). In Dinkins, the employee was enrolled as a student at the Rochester Institute of Technology pursuant to an arrangement with his employer, Xerox Corporation, whereby Xerox funded the tuition pursuant to its national tuition aid program. The employee attended school after work, was not compensated for the hours he spent in class, and if he did not complete his course he was required to pay 100% of the tuition. Enroute to class one evening, the employee was involved in an automobile accident. The plaintiff sought to find Xerox liable under the doctrine of respondeat superior for its employee's alleged negligence when he was driving the car. However, the court found that the automobile accident did not occur in the course and scope of the employee's employment so as to render Xerox liable for the plaintiff's injuries. Appellant submits that the Dinkins case is consistent with the Florida rule that going for meals, food or drinks is a deviation from employment. Nealy v. Ross, 249 So.2d 522 (Fla. 3rd DCA 1971); Maroney v. Edward A. Kelly & Sons, Inc., 195 So.2d 208 (Fla. 1967); Morgan v. Collier County Motors, Inc., 193 So.2d 35 (Fla. 2d DCA 1966); and Ball v. I.C. Helmly Furniture Company, 132 Fla. 882, 182 So. 435 (Fla. 1938).
The rule is well settled in Florida that whether an employee's tortious acts are within the scope of his employment relationship is normally to be determined by the jury, except in those cases in which a jury could reach only one conclusion that could be sustained. Tuberville v. Concrete Construction Company, 270 So.2d 431 (Fla. 1st DCA 1972). Accord, Gordils v. DeVilliers, supra; Alsay-Pippin Corp. v. Lumert, 400 So.2d 834 (Fla. 4th DCA 1981); Gold Coast Parking, Inc. v. Brownlow, 362 So.2d 288 (Fla. 3rd DCA 1978), cert. dismissed, 368 So.2d 1367 (Fla. 1979).
In N. and L. Auto Parts Company v. Doman, 111 So.2d 270 (Fla. 1st DCA 1959), cert. discharged, 117 So.2d 410 (Fla. 1960), *122 this court was called upon to determine the compensability of an injury to a route salesman for a parts company. The claimant was required to travel through various communities in Georgia and South Carolina calling on customers of the company. On the day of the injury, claimant and a fellow employee drove to the outskirts of Savannah, where they registered at a motel. The two took a taxi into Savannah to see a movie after which they had a late night snack and returned to the motel. After exiting from the taxi and before returning to the motel room, the claimant was injured. In holding that the injury arose out of and in the course of the salesman's employment, the court cited the following rule:
The general rule is that an employee whose work entails travel away from the employer's premises is within the course of his employment at all times during the trip other than when there is a distinct departure for a non-essential personal errand. Injuries incurred during such travel and while attending to the normal creature comforts and reasonably comprehended necessities, as distinguished from those incurred in the course of amusement ventures are usually held to be compensable. Compensation in such areas is predicated on the premise that these acts do not take the employee out of the scope of employment because they are necessary to his health and comforts; that although such acts are personal to the employee, nevertheless they are expected incidents of his away-from-home employment and indirectly if not directly benefit the employer; that such acts, therefore, are not in fact deviations from the course of employment.
111 So.2d at 271-72. Applying this rule to the facts in this case, the jury could have found that Al-Faqeer's employment with Saudi entailed travel away from his home in Saudi Arabia to the United States; that when Al-Faqeer drove to Albertsons to buy groceries, he was attending to the normal creature comforts and reasonably comprehended necessities; that his trip to Albertsons was not a non-essential personal errand, and thus, he was not deviating from the course and scope of his employment. Although not binding on this court, several decisions from other states support this analysis. See, e.g., Houghton v. Babcock and Wilcock Company, 189 N.Y.S.2d 436, 9 A.D.2d 575 (1959), motion for leave to appeal denied, 193 N.Y.S.2d 1025, 7 N.Y.2d 705, 162 N.E.2d 752 (1959); and Schreiber v. Revelon Products Corp., 171 N.Y.S.2d 122, 5 A.D.2d 207 (N.Y. App. Div. 1958). Admittedly these cases were decided under the "arising out of and in the course of employment" standard in workers' compensation, but they are nevertheless instructive in determining the limits of the common law doctrine of respondeat superior. Harris v. Trojan Fireworks Co., 174 Cal. Rptr. 452, 455, 120 Cal. App.3d 157, 162 (4th Dist. 1981); Thurston v. Morrison, 141 So.2d 291 (Fla. 2nd DCA 1962).
The Dinkins case relied upon by Saudi is factually distinguishable. The Xerox educational program in Dinkins was voluntary. The Xerox employee was not required to take the class to retain his position or advance in his employment, and Xerox exercised no control over the choice of classes taken by its employee. The Xerox employee was required to take his courses outside working hours and received no pay for attending classes. Based upon these facts which differ substantially from the facts in this case, the trial judge in Dinkins held that Xerox could not be legally responsible for its employee's automobile accident.[8] In short, we cannot say based *123 upon the facts adduced below, that as a matter of law the jury was not entitled to conclude that Al-Faqeer was acting within the course and scope of his employment when he was involved in the automobile accident injuring Dunn.[9]
Turning now to Iowa's cross-appeal, we affirm the trial court's final judgment against Iowa for $90,000.00. In its brief, Iowa relies on Section 627.727(1), Florida Statutes (1981), for its contention that once Dunn proved that he had a claim against Saudi Arabian Airlines, he was no longer entitled to make an underinsured motorist claim against Iowa. Underinsured motorist coverage under Section 627.727(1) is excess over but shall not duplicate "benefits available to an insured ... from the owner or operator of the uninsured motor vehicle or any other person ... jointly or severally liable together with such owner or operator for the accident." Under this provision, "benefits available" means benefits available to the insured under the automobile liability insurance policy of the underinsured motorist. State Farm Mutual Auto Insurance Company v. Diem, 358 So.2d 39, 41 (Fla. 3d DCA 1978). In this case, the only "benefits available" was the $10,000.00 from Allstate's automobile liability insurance policy. In that regard Section 627.727(1) provides that only the underinsured motorist automobile liability insurance shall be set off against underinsured motorist coverage. Thus, the trial court correctly permitted a set off of $10,000.00 against Iowa's policy limits of $100,000.00 and entered final judgment for $90,000.00. The fact that Saudi Arabian Airlines may or may not be financially responsible is irrelevant to this determination, though it may be otherwise with respect to Iowa's subrogation rights if Dunn is able to collect his judgment against Saudi Arabian Airlines.
AFFIRMED.
JOANOS and NIMMONS, JJ., concur.
NOTES
[1] This court's prior opinion shows that the court assumed Al-Faqeer to be an employee of Saudi. 395 So.2d at 1296. This court's assumption of an employer-employee relationship was based upon arguments made by the parties in their briefs. We note also that immediately after Saudi's appeal from the order denying the motion to abate, Saudi filed an answer to the amended complaint in which Saudi admits that it employed Al-Faqeer. Nevertheless, in this appeal the issue of an employer-employee relationship between Saudi and Al-Faqeer is vigorously contested. This apparent inconsistency is explained by Saudi's change of position when it answered Dunn's second amended complaint. In this answer, Saudi denied that it had employed Al-Faqeer and from this point on in the litigation, Saudi has continued to dispute the existence of an employer-employee relationship.
[2] On appeal, Saudi does not dispute the finding of negligence by Al-Faqeer or the amount of damages awarded.
[3] Iowa's insurance policy afforded $100,000.00 underinsured motorist coverage to Dunn. Allstate's insurance policy, covering Shihry's automobile, had $10,000.00 policy limits. The trial court limited recovery against Iowa to its $100,000.00 underinsured motorist coverage and set off the $10,000.00 liability insurance. Accordingly, judgment was entered against Iowa for $90,000.00.
[4] A trainee is not an "employee" under the broad definitions of the Act, 29 U.S.C. §§ 203(e)(1), 203(g), if these six criteria adopted by the wage and hour administrator are met:

(1) the training, even though it includes actual operation of the facilities of the employer is similar to that which would be given in a vocational school;
(2) the training is for the benefit of the trainees;
(3) the trainees do not displace regular employees, but work under close observations;
(4) the employer that provides the training derives no immediate advantage from the activities of the trainees and on occasion his operations may actually be impeded;
(5) the trainees are not necessarily entitled to a job at the completion of the training; and
(6) the employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.
Wage and Hour Manual (BNA) 91:416 (1975). These criteria were cited and relied upon by the court in Donovan, supra, at 273; Accord, Atkins v. General Motors Corporation, 701 F.2d 1124 (5th Cir.1983).
[5] The words "employer-employee" are an outgrowth of the terms "master" and "servant" and are the terms now commonly used to describe the relationship. 2 Fla.Jur.2d Agency and Employment § 120, p. 297.
[6] Whether or not Al-Faqeer's activities could be classified as "work" in the ordinary sense is not determinative of his status. As the Donovan court pointed out, if trainees "work," "presumably they are employees," implying that if that were the only test, there would be little need to examine all other facets of the relationship. 686 F.2d at 272. As the court also recognized, however, many companies hire persons as employees and pay them while they attend company schools. Id.
[7] Because there was evidence to justify a finding by the jury that Al-Faqeer was a Saudi employee, we find it unnecessary to consider appellant's argument that there was insufficient evidence to support a verdict based on "agency." Colonial Stores, Inc. v. Scarborough, 338 So.2d 1119 (Fla. 1st DCA 1976), aff'd. 355 So.2d 1181 (Fla. 1977).
[8] In deciding Dinkins, the court distinguished the decision of Makoske v. Lombardy, 47 A.D.2d 284, 366 N.Y.S.2d 475 (1975), aff'd. 39 N.Y.2d 773, 385 N.Y.S.2d 31, 350 N.E.2d 408 (1976). In Makoske, the employee-driver was an employee of Montgomery Ward attending a work related course in Saratoga Springs. The course was taught at a training school designated by the employer and the employees were required to stay at a local motel. The trainees' lodging and meal expenses were paid by the employer. After dinner on the last day of the program, several of the employees formed a group to drive to Saratoga racetrack and, enroute, were involved in an automobile accident. The court held that the employees were not acting outside the scope of their employment as a matter of law.

Although we note the Makoske decision, we find it unnecessary at this time to determine whether we would follow it so as to extend the umbrella of course and scope of employment to include a departure for a non-essential personal errand or amusement venture.
[9] In his brief, Dunn also argues that this court's prior opinion on the motion to abate established that the allegations of the amended complaint stated a cause of action under the doctrine of respondeat superior, and that the doctrine of law of the case precludes Saudi from rearguing this issue. We do not agree.

Since this court's prior decision was determined on the basis of allegations and not proof, the law of the case doctrine does not bar this court's review of the proof presented at trial. The doctrine only applies where the same factual and legal issue is presented to the court a second time, Greenberg v. Greenberg, 397 So.2d 1032 (Fla. 3rd DCA 1981), and not where the "facts and circumstances on this appeal are materially different from those on the former appeal." Hendrick v. Strazzulla, 168 So.2d 156, 161 (Fla. 2nd DCA 1964), cert. discharged 177 So.2d 1 (Fla. 1965). Guided by these principles, we find that this court's prior decision in Dunn, 395 So.2d 1295, does not preclude it from considering those facts which were previously unavailable to it when its review of a motion to abate was limited to allegations and not proof.