449 So.2d 339 (1984)
Karl S. PEARSON, Appellant,
v.
Michael J. HARRIS, D/B/a Ace Tower Company, Western World Insurance Company, Inc., Rustcraft Broadcasting Company, a Wholly Owned Subsidiary of Rustcraft Greeting Cards, Inc., D/B/a Wjks-Tv and Gencom, Inc., Formerly Known As Aztec Communications, Inc., Appellees.
No. AT-68.
District Court of Appeal of Florida, First District.
March 30, 1984.
*340 V. James Facciolo, Searcy & Facciolo, Jacksonville, for appellant.
Luke G. Galant, Dawson, Galant, Sulik, Levy & Ellis, Jacksonville, for appellee-Western World Ins. Co., Inc.
Karen K. Cole, Boyd, Jenerette, Staas, Joos, Williams & Felton, Jacksonville, for appellee-Rust Craft Broadcasting Co.
Peter J. Kellogg, Grissett, Humphries & Kellogg, Jacksonville, for appellee-Gencom, Inc.
SMITH, Judge.
Pearson appeals from a summary judgment in his personal injury action finding no liability on the part of defendants-appellees, Western World Insurance Co., Inc. (Western), Rustcraft Broadcasting Company (Rustcraft), and Gencom, Inc. (Gencom).[1] We concur in the trial court's finding of no liability on the part of Western, which provided liability insurance coverage to Pearson's employer, Michael J. Harris, d/b/a Ace Tower Company (Ace Tower), because the doctrines of election of remedies and estoppel bar Pearson's claim that he was not an "employee," within the exclusionary provisions of Western's liability insurance policy issued to Ace Tower. As to Rustcraft and Gencom, we approve the trial court's determination of no liability because there are no facts upon which a jury could determine that either was guilty of negligence which caused or contributed to Pearson's injuries; and further, the theory of liability relied upon by Pearson, under which non-negligent parties employing an independent contractor for the performance of inherently dangerous operations are liable to persons injured thereby, does not apply to Rustcraft or Gencom with respect to injuries of an employee (Pearson) of the independent contractor (Ace Tower). Affirmed.
Rustcraft owned the WJKS television tower in Jacksonville. It leased space on the tower to Gencom, which provided beeper service to customers in the area. Gencom contracted with Ace Tower, owned by Michael J. Harris, to install an antenna on the tower. Appellant Pearson was engaged by Ace Tower to perform work connected with the installation. While working on the tower at about the 600 foot level, Pearson heard what sounded to him like a gunshot and a bullet whizzing past. In response, he returned to the ladder in the middle of the tower structure, and while making his descent down the ladder fell several hundred feet within the tower before his fall was broken by part of the metal framework. He sued Ace Tower, Rustcraft, and Gencom, and joined Ace Tower's liability insurer, Western, alleging that coverage was provided by Western's policy for Ace Tower's negligent conduct resulting in his injuries. In his complaint, Pearson alleged that because of the inherently dangerous nature of the work he was performing on the tower, Rustcraft owed a non-delegable duty to provide him with a safe place to work, also the duty to insure *341 that such work was not performed on its tower without the use of appropriate safety devices, and further, that Rustcraft had the duty to warn of hidden or non-apparent dangers, such as the danger from sniper fire. He specifically alleged that Rustcraft breached its duties by failing to warn of the danger of sniper fire directed at persons working on the tower, claiming that Rustcraft knew of the existence of that danger or the "substantial risk" of sniper fire. He further alleged that Rustcraft breached its duties by failing to provide on the tower a means of connecting safety devices such as harnesses or nets.[2]
As to Gencom, Pearson alleged that as a contractor of the ultra-hazardous work to be performed by him, it had a non-delegable duty to require its contractor to undertake the work in a reasonably safe manner, and to advise its contractor of any hidden or unusual non-apparent dangers on the job. He alleged that Gencom also was negligent in failing to advise him of the danger of sniper fire.[3]
Turning first to the merits of Pearson's claim against Western, it is first noted that Western supported its motion for summary judgment by proving that prior to the filing of his negligence complaint, Pearson had filed a claim for workers' compensation benefits against Ace Tower in which Pearson claimed that he occupied the status of "employee" so as to be entitled to the benefits of the workers' compensation law. A final hearing was held and an order was entered, prior to the filing of the negligence complaint, in which the deputy commissioner determined that Pearson was an employee, and that Ace Tower was liable for the payment of workers' compensation benefits as his employer. By stipulation of the parties, the employee-employer relationship was the sole issue presented to and ruled upon by the deputy commissioner, with all claims for specific benefits and entitlements being reserved for further determination. Ace Tower took the position in the workers' compensation proceeding, as it did in the circuit court suit, that Pearson was, indeed, an independent contractor, not an employee of Ace Tower.
We have carefully examined the evidence of record tending to show that Pearson was an employee of Ace Tower. We find there was ample support for the deputy commissioner's finding that Pearson was an employee, but the purpose of our review here is to determine whether summary judgment could properly be entered on this issue in the circuit court litigation. In brief, there is no evidence that Pearson had done work for any employer other than Ace Tower near the time of injury. It was his normal custom to report directly to the home of Mr. Harris, Ace Tower's owner, on a daily basis, or on occasion to have Mr. Harris pick him up at his (Pearson's) residence. Pearson's work assignments were dictated by the needs of Ace Tower from day to day. In short, the evidence strongly indicates that Pearson was told where to go, what to do, and how to do it. Most of the tools used by Pearson in the performance of his duties were provided by Ace Tower, and he did not have the authority to hire additional labor. Pearson was paid at the conclusion of each job, but his pay was not pre-negotiated on a job-by-job basis. Although Pearson argues that there is a difference between an "employee" under the workers' compensation law, Section 440.02(2)(a), Florida Statutes, and an "employee" for the purposes of determining coverage under a liability insurance policy, we conclude that any discussion of such differences as might be *342 pointed out with respect to specific categories of employment would be largely academic. In general, the criteria for determining whether the relationship is one of employer-employee, or contractee-independent contractor, under both the workers' compensation law and under the common law, are virtually identical. See, Florida Industrial Commission v. Schoenberg, 117 So.2d 538 (Fla. 1960). As we said in Brewer v. Cueto, 379 So.2d 1322, 1323 (Fla. 1st DCA 1980), cert. den. 388 So.2d 1111 (Fla. 1980), whether or not an individual is an independent contractor "ultimately turns on the power to control." See, also, Orcutt v. Environmental Technologists, 432 So.2d 701 (Fla. 1st DCA 1983). This court noted recently, in Saudi Arabian Airlines Corporation v. Dunn, 438 So.2d 116 (Fla. 1st DCA 1983), that at common law, the four elements considered in making a determination of whether a master and servant relationship exists are (1) the selection and engagement of the servant, (2) the payment of wages, (3) the power of dismissal, and (4) the control of the servant's conduct, and further, "... the essential element being the right of control and the right to direct the manner in which the work shall be done, the payment of wages being the least important factor." Id. at 120. Applying these criteria, we think there is little question that Ace Tower maintained full control of Pearson's work, although Mr. Harris' testimony to the contrary cannot be completely disregarded. Furthermore, the payment of wages criterion is not fully satisfied under the facts of the case before us, since Pearson was paid on a per-job basis, and his employer did not deduct withholding and social security taxes. A fact-finding tribunal could easily conclude, nevertheless, that any ambiguity with respect to the method of compensation would not be sufficient to overcome the existence of an employer-employee relationship based on the other, and more significant, criteria. In an abundance of caution, however, and in order to preserve the principle, reiterated in Saudi Arabian Airlines, supra (438 So.2d at 119), that the existence of an employer-employee relationship is normally one for the jury, we decline to hold that the record evidence compels a finding, as a matter of law, that Pearson was acting as an employee when injured. Instead, we base our decision on other grounds urged by Western.
We agree with Western's contention that by maintaining the workers' compensation proceeding and obtaining an adjudication that he was an employee of Ace Tower, Pearson made an election of remedies that Western may assert as a bar to Pearson's present civil action in which he now alleges that he was not an employee, but an independent contractor. Although in Williams v. Duggan, 153 So.2d 726 (Fla. 1963), the court determined that no election had been made where the plaintiff first filed a workers' compensation claim, then withdrew it and filed a common law action, language in the opinion indicates a different result where, as here, the workers' compensation litigation has resulted in the rendition of an order on the merits advantageous, or potentially so, to the claimant. More recently, this court in Hume v. Thomason, 440 So.2d 441 (Fla. 1st DCA 1983), held that the doctrine of election of remedies was properly applied to bar a workers' compensation claim where the claimant had previously maintained a civil action in circuit court against his putative employer. Of particular significance here is the court's resolution of the issue of whether the civil action had "matured" to the point necessary to bar the worker's compensation claim, since Hume had actually suffered an adverse judgment in the civil action. The court said:
It is held that an election is matured `when the rights of the parties have been materially affected to the advantage of one or the disadvantage of the other,' and `[i]t is generally conceded that to be conclusive it must be efficacious to some extent.' Williams v. Robineau, 124 Fla. 422, 168 So. 644 (1936); Williams v. Duggan, 153 So.2d 726 (Fla. 1963). In the instant case, the summary judgment rendered in the circuit court was obviously efficacious from the Thomasons' point *343 of view, as it worked to their advantage and to Hume's disadvantage. Thus, Hume's election matured when judgment was entered finally adjudicating the rights of the parties. He was precluded thereafter from pursuing his worker's compensation claim.
See also, Matthews v. G.S.P. Corp., 354 So.2d 1243, 1244 (Fla. 1st DCA 1978), in which we held that the provisions of the act "may not be accepted and then repudiated by the employee." We conclude that since Western's liability to Pearson, to the extent of the coverage provided by the insurance policy insuring Ace Tower, is coextensive with the negligence liability of Ace Tower in the present action, Western should be accorded the benefit of any defenses available to its insured, Ace Tower.
We are of the further opinion that ordinary principles of estoppel would bar Pearson from maintaining a position in his civil action which is inconsistent with the position he successfully maintained in his workers' compensation proceeding. See, Grauer v. Occidental Life Insurance Company of California, 363 So.2d 583 (Fla. 1st DCA 1978), cert. den. 372 So.2d 468 (Fla. 1979); Federated Mutual Implement and Hardware Insurance Company v. Griffin, 237 So.2d 38 (Fla. 1st DCA 1970). Having determined that the present suit against Western is barred under the principles above stated, we find it unnecessary to rule upon and therefore do not discuss Western's contention that the action is also barred under principles of res judicata, or estoppel by judgment.
That Rustcraft and Gencom were also entitled to summary judgment of no liability is clear. There is not a scintilla of evidence of any prior incident involving sniper fire around the tower, therefore no basis for the allegation that Rustcraft and Gencom knew or should of known of such danger, and should have warned Pearson. Further, there is no evidence that the tower was defective or unsafe in any respect, nor that Pearson's injury was causally related to any breach of duty on the part of Rustcraft or Gencom. The uncontrovered testimony of Mr. Harris, owner of Ace Tower, was that the ladder within the tower was equipped with a safety cable and a "deadman's switch," a device which, when properly attached to a climber's safety belt, will catch and lock onto the cable and prevent a fall in event the climber loses his footing or hold on the ladder. It is uncontroverted that Pearson was not attached to the safety cable or any part of the tower structure at the time of his fall, although he was wearing a safety belt, equipped with a safety line.
The record further reflects uncontroverted evidence that neither Rustcraft nor Gencom exercised any supervision or control over the work being performed by the independent contractor, Ace Tower, and that neither assisted in the attachment of the antenna or gave directions as to the manner and means whereby the antenna was to be hoisted into position and bolted to the tower framework. Gencom furnished only the tower, its mounting brackets, and the coaxial cable (which was already on the tower), and designated the elevation at which the antenna was to be attached. Ace Tower was solely responsible for affixing the antenna, using its own personnel, methods and equipment, and for positioning the antenna so as to provide maximum performance.
Certain principles of law governing the relationships of owners, contractors, independent contractors and their employees control the disposition of Pearson's complaints against Rustcraft and Gencom. First, there is no common law duty on the part of an owner to provide a safe place to work for employees of contractors engaged in the performance of work on the owner's premises. Goodman v. Kendall Gate-Invest. Co., Inc., 395 So.2d 240 (Fla. 3rd DCA 1981); Cuyahoga Wrecking Corp. v. Mastres, 368 So.2d 380 (Fla. 3rd DCA 1979); Van Ness v. Independent Construction Company, 392 So.2d 1017 (Fla. 5th DCA 1981). Secondly, contrary to the position urged by Pearson here, the rule is that the owner is not vicariously liable under the inherently dangerous operations or hazardous *344 work doctrine for injuries suffered by employees of an independent contractor in the performance of such work. Florida Power and Light Co. v. Price, 170 So.2d 293 (Fla. 1964); Horton v. Gulf Power Company, 401 So.2d 1384 (Fla. 1st DCA 1981); Christy v. Florida Power Corporation, 232 So.2d 744 (Fla. 1st DCA 1970). See, also, Scofi v. McKeon Construction Company, 666 F.2d 170 (5th Cir.1982), applying Florida law. In our view, the above principles apply alike to Rustcraft and Gencom. Rustcraft, the owner of the tower, did not participate in any manner in the contract for or placement of the antenna. Gencom, a lessee contracting with an independent contractor for the placement of an antenna on tower space leased from Rustcraft, occupied a position similar to that of an owner, and had no active participation in the performance of the work of the independent contractor.
We recognize that under the inherently dangerous doctrine the rule of non-liability of the non-participating owner does not apply with respect to injuries to third parties, Florida Power and Light v. Price, supra, and Scofi v. McKeon Construction Company, supra, nor does it apply with respect to injuries to an employee of an independent contractor where the owner is also the general contractor, or otherwise actively engages in or supervises the work. Atlantic Coast Development Corporation v. Napoleon Steel, 385 So.2d 676 (Fla. 3rd DCA 1980); General Portland Land Development v. Stevens, 395 So.2d 1296 (Fla. 4th DCA 1981). See, also, the discussion in Padilla v. Gulf Power Company, 401 So.2d 1375, 1378-1379 (Fla. 1st DCA 1981), pointing out (in explanation of the Florida Power case, supra) that the rule of non-liability of an owner/contractee further pre-supposes the absence of a showing of negligence or omission of duty or proper care on the part of the owner/contractee. No such showing against either Rustcraft or Gencom has been made here. As pointed out above, there was no defect in or absence of safety devices on the tower, and no showing of any prior instance of sniper fire of which Rustcraft or Gencom should have been aware, and of which Ace Tower or Pearson should have been warned. Additionally, Pearson's attempt to predicate liability upon allegations concerning the failure of Rustcraft or Gencom to provide him with other safety devices (lifelines, grab-dogs, harnesses, and safety nets) and to require him to use them (see footnotes 2 and 3) were properly stricken by the trial court. There is no duty, under any of the authorities cited by Pearson or discovered in our research, upon parties in the position of Rustcraft or Gencom to provide these additional safety devices or to require their use by persons working for an independent contractor. Had they undertaken to provide such assistance, and did so negligently, causing Pearson's injuries, then liability could attach. See, Padillo, supra.
For the above reasons, the final judgment appealed from is AFFIRMED.
WIGGINTON and NIMMONS, JJ., concur.
NOTES
[1] Michael J. Harris, d/b/a Ace Tower Company, is not a party to this appeal.
[2] He also complained of Rustcraft's failure to require the use of safety devices such as lifelines, harnesses, or grab-dogs which would effectively prevent or reduce the risk of injury from falling, and by failing to require the use of a safety net, but these provisions were stricken by order of the trial court.
[3] As was the case with respect to the count against Rustcraft, Pearson alleged that Gencom also was negligent in failing to require the use of safety devices or safety nets, that it failed to provide a safety net, and failed to give reasonable instructions to Pearson regarding the use of a safety line while moving or working within the tower. These latter allegations were also stricken by order of the trial court.