553 So.2d 263 (1989)
Tonia GARVER, Appellant,
v.
EASTERN AIRLINES and Gab Services, Inc., Appellees.
No. 89-335.
District Court of Appeal of Florida, First District.
November 28, 1989.
Rehearing Denied January 5, 1990.
*264 Mark L. Zientz, of Williams & Zientz, Miami, for appellant.
Cesar A. Armstrong, of Lanza, O'Connor, Armstrong, Sinclair & Tunstall, P.A., Coral Gables, for appellees.
ERVIN, Judge.
This is an appeal from an order denying workers' compensation benefits, based upon a finding that claimant's injuries did not arise out of and in the course of employment, because at the time of the accident, claimant, a traveling employee, was engaged in a substantial deviation from her employment. We reverse and remand for further proceedings.
Appellant, a flight attendant who lives in Miami, flew a scheduled flight from Miami to Los Angeles, where she was slated to remain until the next morning when she would take the return flight to Miami. The morning flight was cancelled, however, and she was rescheduled to fly from Los Angeles on the midnight flight that same day. Having no work assignments during her extended layover, she arranged to have lunch at a restaurant with a personal friend who lived in the greater Los Angeles area. Following lunch, the two proceeded in the friend's automobile to his home located about twenty miles from the restaurant. After having traveled approximately five miles, they were involved in an automobile accident in which claimant suffered her injuries.
In this appeal the parties have cited a number of cases involving variations of the traveling employee's rule, some approving compensability, others disapproving. The opinions in some of the cases discussed cannot be easily reconciled. It is to be hoped that this opinion will clarify some of the perceived inconsistencies in several of those cases recited.
In Gray v. Eastern Airlines, Inc., 475 So.2d 1288 (Fla. 1st DCA 1985), review denied, 484 So.2d 8 (Fla. 1986), a case relied upon principally by the claimant, this court reversed an order denying a traveling employee compensation benefits on the ground that the judge had erred in holding that the specific activity which claimant had engaged in at the time of his injury  playing basketball  was a substantial deviation from the course of his employment. It was our view that the activity contributed to the personal health and comfort of the employee. In so holding, we stated the following rule pertaining to traveling employees:
`Employees whose work entails travel away from the employer's premises are held ... to be within the course of their employment continuously during the trip, except when a distinct [departure] on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.'
*265 Id. at 1289 (quoting 1A. Larson, The Law of Workmen's Compensation § 25.00 (1979)).
The employer below, in arguing that the appellant had substantially deviated from her employment at the time she suffered her injuries, places great reliance upon this court's recent opinion in Eastern Airlines v. Rigdon, 543 So.2d 822 (Fla. 1st DCA 1989), which disapproved compensation benefits to a flight attendant who suffered injuries while downhill skiing during a layover. From a superficial reading, the Rigdon and Gray opinions might appear to conflict. We are persuaded, however, that each represents a proper application of the traveling employee's rule, in that the two cases turned upon the reasonableness of the activity engaged in by the claimants at the time of their injuries. Accordingly, we see a material difference between the type of recreation indulged in during the layover by the employee in Gray, playing basketball at a nearby YMCA that he was entitled to use, because he was a hotel guest, and by the employee in Rigdon, downhill skiing at a resort located fifty-eight miles from the employee's motel. We are of the view that reasonable minds would generally agree that downhill skiing is an activity that is far more conducive to the occurrence of serious injury than that of basketball, a fact particularly alluded to by the court in Rigdon. See id. at 823.
There is, nonetheless, language in Rigdon which would otherwise suggest that injuries suffered under circumstances similar to those at bar are not compensable. Specifically, the Rigdon court quoted approvingly from this court's earlier opinion in N. & L. Auto Parts Co. v. Doman, 111 So.2d 270, 272 (Fla. 1st DCA 1959), cert. discharged, 117 So.2d 410 (Fla. 1960), in which the Doman court had stated: "[W]hen one is engaged in a purely private mission he is not within the scope of his employment until he returns to the employer's place of business or point of departure." Furthermore, the Doman court commented that if the claimant had been injured during a private mission, either while going to see a movie or returning to his motel, the injury would not be compensable. Id. The above statements were not, however, essential to the decision reached by the court in Doman, in that the claimant's accident was in fact held to have been work-related, because at the time of his injury, the claimant's deviation on a personal errand had come to an end.[1]
A strict application of the above-quoted language from Doman would, of course, require affirmance of the order on review, because at the time of her injuries claimant had neither returned to the employer's place of business nor to the point of departure, but was rather traveling away from her hotel for the purpose of enjoying a social visit with a friend. If the statements in Doman represent the correct rule, the injuries suffered by the flight attendant in Gray during a layover while playing basketball at a YMCA near his motel should have been held noncompensable for the reason that they occurred both away from the work site and off the premises of his motel. Similarly, the injuries sustained by a traveling employee in an automobile accident while en route to a restaurant located approximately two to four miles from the employee's motel should have been noncompensable, yet they were, in fact, held to be covered. See Leonard v. Dennis, 465 So.2d 538 (Fla. 2d DCA), review denied, 476 So.2d 673 (Fla. 1985). Of course, the above language from Doman, quoted in Rigdon, was only dicta, therefore, we do not consider that such declarations have any precedential value in regard to our decision at bar. Nevertheless, we are of the view that if these statements were ever the established rule in Florida regarding the compensability of injuries suffered by traveling employees, the rule has since been eroded and is no longer applicable.
In support of its statement that one who engages in a private errand is not within the scope of his employment until he returns to the employer's place of business or point of departure, the Doman court cited Duval Eng'g & Contracting Co. v. Johnson, 154 Fla. 9, 16 So.2d 290 (1944); Bituminous Casualty Corp. v. Richardson, *266 148 Fla. 323, 4 So.2d 378 (1941), and Fidelity & Casualty Co. of N.Y. v. Moore, 143 Fla. 103, 196 So. 495 (1940). Of the three referenced cases, only Duval Eng'g & Contracting Co. v. Johnson involved a traveling employee. In that case, the employee died from injuries suffered in an automobile accident which occurred while the employee was returning to Lake City, the point of departure, from a personal errand in Jacksonville. In disapproving an award of death benefits, the court rejected the rule approved in a number of out-of-state jurisdictions, "that when an employee who is injured after he has finished his private errand and while he is within the process of returning to the place where he is to continue to perform his services as an employee, the injury is held to arise out of and in the course of the employment." Johnson, 154 Fla. at 12, 16 So.2d at 291. The Johnson court instead adhered to the rule previously established in Fidelity & Casualty Co. of N.Y. v. Moore, which the Johnson court apparently construed as requiring an employee's injuries to occur on the premises of the work site or the point of departure before any industrial claim could be deemed compensable. Although the supreme court's earlier opinion in Moore did not define a single test for determining whether an injury arose out of and in the course of employment, but instead recited alternative tests, the court in Bituminous Casualty Corp. v. Richardson later relied upon this case as requiring a showing that the injury must arise out of the employment and occur during the course of employment. Richardson, 148 Fla. at 323-29, 4 So.2d at 378-80.
Subsequently, the Florida Supreme Court, in Strother v. Morrison Cafeteria, 383 So.2d 623 (Fla. 1980), recognized the confusion engendered by cases in which courts had applied inconsistent tests to establish the compensability of an accident, and explicitly rejected language in earlier case law requiring that the two elements necessary for establishing the compensability of an accident be separately proven. In Strother, the employer cafeteria argued, relying upon Richardson and Southern Bell Tel. & Tel. Co. v. McCook, 355 So.2d 1166 (Fla. 1977), that an injury suffered by its cashier-employee during an assault by unknown assailants who had earlier been seen at the cafeteria by the cashier was noncompensable, because the injury occurred off the premises and hence could not be considered as within the course of employment. In rejecting this argument, the court, while discussing a number of its prior opinions, including Richardson and Moore, observed that although the separateness of the "arising out of" and "in the course of employment" elements was still recognized, proof of one need not be established independently of the other. These are instead considered parts of a single test of work connectedness, where any deficiency in the strength of one element might be cured by the strength of the other. Strother, 383 So.2d at 626. Consequently, the court in Strother approved the rule recognizing that an employee will not necessarily be barred from compensation, notwithstanding the fact that his or her injuries occurred away from the employment premises, if it is shown that the causative factors producing the injury occurred within the time and space limits of the employment relationship. Id. at 628.
This test of work connectedness has been applied in various contexts. One in particular involves an exception to the premises rule, generally disallowing compensation for injuries occurring off the premises of the work place. See Doctor's Business Serv., Inc. v. Clark, 498 So.2d 659, 662 (Fla. 1st DCA 1986), review denied, 506 So.2d 1041 (Fla. 1987). A recognized exception to this rule is the principle that the course of employment should include any injury which occurs off the premises, yet "at a point where the employee was within the range of dangers associated with the employment." Id. (emphasis added). We have also applied the single test of work connectedness to the opposite situation  one in which the worker's injury undisputedly occurs on the premises of the work site, but proof that the injury arose out of such employment is weak. In Tampa Maid Seafood Prods. v. Porter, 415 So.2d 883 (Fla. 1st DCA 1982), an employee attacked *267 another employee at work for personal reasons. This court nonetheless approved compensability on the theory that the workplace in some way contributed to the assault, because of such circumstances as the close proximity between the claimant and the assailant, and that the knife used by the aggressor to facilitate the assault was used at work.
We therefore find no continuing vitality in a rule that would inflexibly bar a traveling employee from compensation simply because at the time the employee suffered his or her injuries, the employee had not yet returned from a personal mission to the work site or the point of departure. The proper test for deciding whether the injury of a worker, sent on business away from his or her home and suffered at a time when the worker is not actively engaged in the duties of employment, is compensable is to determine "[i]f the injury arises out of a risk which is reasonably incidental to the conditions and circumstances of the employment... ." Cavalcante v. Lockheed Elecs. Co., 85 N.J. Super. 320, 204 A.2d 621, 624 (Super.Ct.Law Div. 1964) (quoting Buerkle v. United Parcel Serv., 26 N.J. Super. 404, 407, 98 A.2d 327, 329 (Super.Ct.App.Div. 1953)), judgment aff'd, 90 N.J. Super. 243, 217 A.2d 140 (Super Ct.App.Div. 1966).
Numerous out-of-state courts have applied this test and upheld compensability in various circumstances. See, e.g., Cavalcante, 85 N.J. Super. 320, 204 A.2d 621 (Super. Ct.Law Div. 1964) (injuries suffered in an automobile accident following several hours of drinking and dancing); Robards v. New York Div. Elec. Prods., Inc., 33 A.D.2d 67, 307 N.Y.S.2d 599 (App.Div. 1970) (injuries suffered in an auto accident following activity of playing pool and drinking); Schneider v. United Whelan Drug Stores, 284 A.D. 1072, 135 N.Y.S.2d 875 (App.Div. 1954) (death benefits approved for next of kin of worker who drowned following boating accident during a layover); Slaughter v. State Accident Ins. Fund Corp., 60 Or. App. 610, 654 P.2d 1123 (Ct.App. 1982) (injuries suffered by a long-haul truck driver during a fight in a bar during a layover); Roadway Express, Inc. v. Workmen's Compensation Appeal Bd. (Seeley), 110 Pa. Commw. 619, 532 A.2d 1257 (Commw. Ct. 1987) (injuries suffered by over-the-road truck driver struck by a motorist while walking across a highway to his motel following several hours of drinking and eating at a bar-restaurant), appeal denied, 519 Pa. 662, 546 A.2d 623 (1988).
The rule that has evolved from the above cases and which is now generally applied in those jurisdictions addressing the issue is stated as follows:
Where an employee, as part of his duties, is directed to remain in a particular place or locality until directed otherwise or for a specified length of time "the rule applied is simply that the employee is not expected to wait immobile, but may indulge in any reasonable activity at that place, and if he does so the risk inherent in such activity is an incident of his employment."
[T]he test as to whether specific activities are considered to be within the scope of employment or purely personal activities is the reasonableness of such activities. Such an employee may satisfy physical needs including relaxation.
Robards, 33 A.D.2d at 67-68, 307 N.Y.S.2d at 600-01 (citations omitted). Moreover, the term "reasonableness" is "given a very liberal construction." Cavalcante, 85 N.J. Super. at 325, 204 A.2d at 624.
This test of reasonableness has been alluded to in Florida as well: "We conclude that ... under the circumstances here in question including an enforced lay-over of more than minimal duration, exercise at a nearby facility should be regarded as necessary for the same reasons underlying extension of course of employment ... to other activities reasonably required for personal health and comfort." Gray v. Eastern Airlines, Inc. 475 So.2d at 1290 (emphasis added).
In deciding whether the particular activity engaged in by the employee during or before his or her injury was reasonable, *268 the trier of fact should consider a number of factors. One is whether the employer placed any restrictions on the worker's activities during a layover. See Cavalcante. Another important factor to consider is whether the employer reimbursed the employee for certain expenses incidental to travel, which, if done, would support a conclusion that the employer reasonably anticipated that the employee would make certain expenditures for personal activities during the times that the employee was not actively engaged in duties on behalf of the employer. See Epp v. Midwestern Mach. Co., 296 Minn. 231, 208 N.W.2d 87 (1973).
In applying the above test to the instant case, we see nothing unreasonable in the activity engaged in by claimant while on a forced layover  traveling in an automobile with a friend immediately following lunch for the purpose of a social visit. The employer, moreover, had placed no restrictions whatsoever on her activities during the time of the layover, and in fact had anticipated that she would incur reasonable expenses incidental to her personal comfort by providing her with hotel accommodations at its own cost and reimbursing her at a flat hourly rate for any such expenses. Obviously, if claimant had sustained her injuries while having lunch at her hotel or at a nearby restaurant, they would have been deemed compensable under the traditional rule. We do not consider it unreasonable or unforeseeable, under the circumstances, that during the claimant's layover she might, incidental to necessary personal ministrations, such as the eating of meals, engage in a social visit with a friend. Nor do we consider the length of the journey to the friend's house, located some twenty miles from the restaurant, to be a distinct departure on a personal errand. We easily take judicial notice of the fact that the greater Los Angeles area is a large metropolitan region, encompassing numerous square miles of territory.
Clearly the employer could not have realistically expected its employee to stay immobile within her hotel while waiting to take the return flight to Miami. Considering the totality of the circumstances, we conclude that the risk of injury which in fact occurred was one that was reasonably incidental to the conditions of employment.
REVERSED and REMANDED for further proceedings.
ZEHMER, J., concurs.
NIMMONS, J., dissents with written opinion.
NIMMONS, Judge, dissenting,
I would affirm the order finding that the subject automobile accident did not occur in the course of the claimant's employment.
A couple of months prior to the accident, the claimant and her friend, Stephen Gordon, had met in Hawaii and exchanged telephone numbers and addresses. Gordon testified that before claimant went to Los Angeles, they made arrangements to meet each other.[1] Gordon picked up the claimant at her hotel and they went to brunch. Afterwards, they decided to spend the rest of the day together at Gordon's home in Pasadena until later when her midnight flight was due to depart from Los Angeles.
They were on their way to Gordon's home in Pasadena, which is approximately 20 miles and a 30-minute drive from the claimant's hotel, when Gordon said, "Let me show you what my car can do." He began speeding in his Ferrari sports car, lost control, and struck a guard rail. They proceeded on to Gordon's home where they remained until he took her to the airport some 7-12 hours later.[2]
*269 Even if I were to agree  which I do not  that our jurisprudence regarding the so-called "traveling employee's rule" should be changed, this case appears to me a singularly inappropriate case meriting the benefit of such new rule. I would affirm.
NOTES
[1] Claimant had fallen on the premises of the motel while walking from a taxi to his room.
[1] Notwithstanding the fact that the claimant's injuries were apparently minor  after the accident, she said she was not hurt  she denied having any recollection regarding the circumstances surrounding her get-together with Gordon. As the judge observed in his order, she did not recall when or how arrangements were made for them to meet, where she was going at the time of the accident, and what their plans were during the day they were spending together. The claimant's lack of candor was apparent. And the judge so found. Notwithstanding the lack of cooperation of the claimant, the judge nevertheless was able to glean some of the basic facts from Gordon's testimony, which the judge accepted.
[2] Gordon testified as follows regarding the time period:

Q. How long from the time of the accident until your passenger left town?
A. About 12 hours  no, less, maybe like 7 hours.