**LIBERTY MUTUAL INSURANCE COMPANY, as subrogee of Alamo Rent–A–Car, Inc., Plaintiff,**

v.

**ELECTRONIC SYSTEMS, INC. and Fireman's Fund Insurance Company, Defendants.**

No. 88–6792–CIV.

United States District Court, S.D. Florida.

Feb. 19, 1993.

Kenneth P. Carman, Carman, Beauchamp, Sang & Rothwell, P.A., Deerfield Beach, FL, for plaintiff.

Mark W. Hektner, Palm Beach Gardens, FL, for defendants.

## OMNIBUS ORDER

PAINE, District Judge.

### Background

In early June 1986, Alamo Rent-a-Car ("Alamo") rented a motor vehicle to Marvin Hill ("Hill"), an employee of Defendant ELECTRONIC SYSTEMS, INC. ("ESI"). On or about June 8, 1986, Hill, while negligently driving the rented vehicle in Indian River County, was involved in an accident with Byron Sickman ("Sickman"), who suffered personal injuries. Sickman sued Alamo. Plaintiff, LIBERTY MUTUAL INSURANCE COMPANY ("LIBERTY MUTUAL"), Alamo's insurer, ultimately settled Sickman's claim for $85,000.00. Alamo then brought the instant action against ESI for indemnification under the doctrine of respondeat superior.

In a Third Amended Complaint (DE 17), LIBERTY MUTUAL, as subrogee of Alamo, was substituted as Plaintiff. After each party moved for summary judgment (DE 27, 29), LIBERTY MUTUAL sought (DE 35), and the Court granted (DE 39), leave to add ESI's insurer, FIREMAN'S FUND INSURANCE COMPANY ("FIREMAN'S FUND"), as a Defendant. The Fourth Amended Complaint (DE 41) was, however, inadvertently brought in Alamo's name. ESI filed a Motion to Dismiss Fourth Amended Complaint (DE 43), in which FIREMAN'S FUND joined (DE 45), based solely on this error. LIBERTY MUTUAL moved to amend the Fourth Amended Complaint to reflect the proper Plaintiff (DE 44), representing that opposing counsel had no objection. While the various motions were pending, Defendants filed a Motion to Dismiss for Want of Prosecution (DE 50).

### Analysis

#### 1. Want of Prosecution

■ Former Southern District of Florida General Rule ("Local Rule") 13, now codified at Local Rule 41.1, provides:

Civil actions not at issue which have been pending without any proceedings having been taken therein for more than three months may be dismissed for want of prosecution by the Court on its own motion after notice to counsel of record. Such actions may also be dismissed for want of prosecution at any time on motion by any party upon notice to the other parties.

The pendency of multiple motions, including LIBERTY MUTUAL's Motion for Summary Judgment (DE 27) and Motion for Leave to Amend (DE 44), does not evince a want of prosecution. Rather, delays in the civil motion practice are necessitated by the heavy caseload in the Southern District of Florida, for which LIBERTY MUTUAL bears no responsibility.

#### 2. Proper Plaintiff

Inasmuch as all parties agree that LIBERTY MUTUAL is the proper Plaintiff, the Fourth Amended Complaint may be amended to substitute LIBERTY MUTUAL for Alamo.

#### 3. Summary Judgment

Although ESI's Motion for Summary Judgment (DE 29) was filed before the Fourth Amended Complaint, the claims

against ESI remain unchanged from the Third Amended Complaint. Moreover, ESI's subsequent representation that the motion is pending has not been challenged. Thus, the Court will consider the Motion for Summary Judgment in light of the current pleadings.

### a. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In the instant case, the basic facts are uncontroverted: the parties agree that the Court should accept Hill's deposition testimony in ruling upon the summary judgment motions (*see* DE 29 at 3).

### b. Facts

As of June 1986, Hill lived and worked in Memphis, Tennessee (Deposition of Marvin Hill (DE 28) at 4, 6). He was employed as a project manager for ESI, a construction company that installed control systems for various businesses (*id.* at 6–8).

In early June 1986, Hill travelled to Florida to supervise ESI's installation of a control system at the Indian River jail facility (*id.* at 9–10). His job was solely to install the system; Hill had no involvement in developing business contacts (*id.* at 35). He would not have been in Florida but for the project manager assignment (*id.* at 34).

ESI paid for Hill's lodging at a trailer park, provided a flat food allowance to cover two meals per day, and reimbursed his expenses for the car rental and gasoline used for work purposes (*id.* at 16–17, 41). ESI prohibited drinking on the job, but placed no restrictions on Hill's off-duty activities in Florida (*id.* at 34–35, 40–41).

On Saturday, June 7, 1986, Hill worked at the Indian River site from 8 a.m. until approximately noon, leaving with no intent to return until Monday morning (*id.* at 24,

36). He and two co-workers attended a beach cookout in the late afternoon, went swimming at the trailer park, and ate supper (*id.* at 24–25). He drank several beers during the day (*id.* at 26). At 8 or 9 p.m., Hill and a co-worker drove the Alamo rental car to the topless bar "Evil People," located on U.S. Highway 1, where they drank more beer and watched ladies dance until 1 or 2 a.m. (*id.* at 25–26, 38). Their visit to the bar was strictly personal; they performed no job-related duties that evening (*id.* at 39–42). Hill was not reimbursed by ESI for the gas used driving to the beach or the bar (*id.* at 41).

Hill does not recall whether his senses were impaired when he left Evil People (*id.* at 27). But on the drive back to the trailer park, he believes that he fell asleep at the wheel (*id.* at 28–29). In any event, Hill smashed the rental car into Sickman's car (*id.*). He was charged with driving under the influence of alcohol (*id.* at 31).

### c. Conflict of Law

■ As a preliminary matter, the Court must decide which state's law applies to this action. The parties have cited Florida cases without any discussion of the conflict of law issue.

Prior to 1980, Florida courts followed the rule of *lex loci delicti*, that the substantive law applicable to tort actions is the law of the state where the injury occurred. *See generally* 10 Fla.Jur.2d *Conflict of Laws* § 43 (1979) (collecting cases). In *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla.1980), the Florida Supreme Court rejected the inflexible *lex loci delicti* rule in favor of the "significant relationships test" set forth in Section 145 of the Restatement (Second) of Conflict of Laws:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[1]

---

**1.** Section 6 lists the following factors as important to all choice of law decisions:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971).

The instant action is not based on the underlying tort of negligence, but on a theory of vicarious liability. Nonetheless, the Florida courts have cited Section 174 of the Restatement, which states: "The law selected by application of the rule of § 145 determines whether one person is liable for the tort of another person." *Stallworth v. Hospitality Rentals, Inc.*, 515 So.2d 413, 416 (Fla. 1st Dist.Ct.App.1987); *Ploor v. Greyhound Lines, Inc.*, 474 So.2d 1280, 1280 (Fla. 3d Dist.Ct.App.1985).

Under Section 145, it appears that Florida law should apply. Alamo is a Florida corporation. It rented the car to Hill in Florida. Hill had been directed to work at an ESI construction site in Indian River County. All of his relevant conduct, including the accident, occurred in Florida. Although the underlying employment relationship was established in Tennessee, the Court finds the Florida contacts more significant.

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability, and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

### d. Determining Florida Law

**[3–5]** In diversity cases arising under Florida law, a federal court is bound by the law articulated by the Florida Supreme Court. *See Allstate Ins. Co. v. Travers*, 703 F.Supp. 911, 914 (N.D.Fla.1988). If the Florida Supreme Court has not spoken, Florida District Court of Appeals decisions control, "absent persuasive indication that the state's highest court would rule otherwise on the issue." *Id.* at 914–15; *see also Blanchard v. State Farm Mut. Auto. Ins. Co.*, 903 F.2d 1398, 1399 (11th Cir.1990). If the cases are split, the federal court should apply the rule representing the overwhelming weight of authority. *Allstate*, 703 F.Supp. at 914. When there is no authority, the court must make an "educated guess" as to how a Florida court would decide. *See Trail Builders Supply Co. v. Reagan*, 409 F.2d 1059, 1061 (5th Cir. 1969).[2] A district court lacks the authority to certify questions to the Florida Supreme Court. *See* Fla. Const. art. V, § 3(b)(6); Fla.R.App.P. 9.150(a).

### e. Scope of Employment

**[6]** "An employer may be vicariously liable to third parties under the principle of respondeat superior for damages and injuries caused by its employee's negligent acts which are committed within the scope and course of his employment." *Bennett v. Godfather's Pizza, Inc.*, 570 So.2d 1351, 1353–54 (Fla. 3d Dist.Ct.App.1990) (citations omitted). Thus, the cross motions for summary judgment (DE 27, 29) focus on the threshold question whether Hill was acting within the scope and course of his employment at the time of the accident. This question is one of law "if there is no conflict in the facts." *Johnson v. Gulf Life Ins. Co.*, 429 So.2d 744, 746 (Fla. 3d Dist.Ct.App.1983).

Restatement (Second) of Conflict of Laws § 6 (1971).

**2.** The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

■ Conduct is within the scope of employment, for tort purposes, only if it (i) is of the kind the employee is hired to perform, (ii) occurs substantially within the time and space limits authorized or required by the work to be performed, and (iii) is activated at least in part by a purpose to serve the employer. *Sussman v. Florida East Coast Properties, Inc.,* 557 So.2d 74, 75–76 (Fla. 3d Dist.Ct.App.1990). This general test cannot, however, be easily applied to an employee who has been sent out of town on a work assignment and must, therefore, spend even his off-duty hours at a place of his employer's choosing.

The parties have cited no Florida case delineating the employer's tort liability for the conduct of an off-duty traveling employee. Rather, LIBERTY MUTUAL and ESI rely upon cases decided under the Workers' Compensation Law, which provides coverage for injuries "arising out of and in the course of employment." Fla. Stat. § 440.09 (1991). While some courts have found workers' compensation decisions "instructive" in determining the limits of respondeat superior, *Saudi Arabian Airlines Corp. v. Dunn,* 438 So.2d 116, 122 (Fla. 1st Dist.Ct.App.1983), others have noted the "different policy considerations" present, *Johnson v. Gulf Life Ins. Co.,* 429 So.2d 744, 747 (Fla. 3d Dist.Ct.App.1983):

The policy goal of the workers' compensation statute is to provide prompt and limited compensation benefits for job-related injuries and to facilitate the employee's speedy return to employment without regard for fault. Those policy considerations are not at work in cases where third parties make claims against the employer under principles of respondeat superior for injuries caused by the employee. Instead, a narrower analysis is undertaken which relies strictly on tort principles.

*Sussman v. Florida East Coast Properties,* 557 So.2d 74, 75 (Fla.3d Dist.Ct.App.) (citations omitted), *rev. denied,* 574 So.2d 143 (Fla.1990). Thus, "there may be situations where it may be proper to hold an

employer liable for compensation benefits to the employee and yet not hold the employer responsible for that employee's conduct in causing injury to a third person arising out of the same situation." *Winn Dixie Stores, Inc. v. Akin,* 533 So.2d 829, 832 (Fla. 4th Dist.Ct.App.1988) (Anstead, J., concurring).[3] Nonetheless, a workers' compensation decision serves as a useful starting point.

In *N. & L. Auto Parts Co. v. Doman,* 111 So.2d 270 (Fla. 1st Dist.Ct.App.1959), two salesmen drove from Florida to Georgia, ate dinner, then registered at a motel for the night. They later took a taxi to and from the movies. After leaving the taxi, one of the salesmen injured his leg while walking toward his motel room.

Upon the employer's appeal from an order awarding workers' compensation benefits, the First District Court of Appeal wrote:

The general rule is that an employee whose work entails travel away from the employer's premises is within the course of his employment at all times during the trip other than when there is a *distinct departure for a non-essential personal errand. Injuries incurred during such travel and while attending to the normal creature comforts and reasonably comprehended necessities, as distinguished from those incurred in the course of amusement ventures* are usually held to be compensable. Compensation in such areas is predicated on the premise that these acts do not take the employee out of the scope of employment because they are necessary to his health and comfort; that although such acts are personal to the employee, nevertheless they are expected incidents of his away-from-home employment and indirectly if not directly benefit the employer; that such acts, therefore, are not in fact deviations from the course of employment.

111 So.2d at 271–72 (emphasis added). The Court noted that "claimant deviated from

---

**3.** Hill apparently did not seek workers' compensation benefits for his own injuries (Deposition of Marvin Hill (DE 28) at 29).

the course of his employment when he elected to drive into Savannah to see a picture show," and would not have been compensated if injured on this trip, but held that "claimant's private mission had been completed upon his return to the motor court." *Id.* at 272.

The "general rule" that *Doman* articulates without citation is essentially the "traveling employee rule" set forth in a leading hornbook:

> Employees whose work entails travel away from the employer's premises are held ... to be within the course of their employment during the trip, except when a distinct [departure] on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.

1A Larson, *The Law of Workmen's Compensation* § 25.00 (1979) ("Larson") (*quoted in Gray v. Eastern Airlines, Inc.*, 475 So.2d 1288, 1289 (Fla. 1st Dist.Ct.App. 1985)). Under this test, Florida courts have consistently extended workers' compensation coverage to injuries related to hotel living or restaurant dining, the necessary by-products of travel. *See Pan American World Airways v. Wilmot*, 492 So.2d 1373, 1374 (Fla. 1st Dist.Ct.App.1986) (hand burned during dinner); *Leonard v. Dennis*, 465 So.2d 538, 541 (Fla. 2d Dist.Ct. App.1985) (accident while driving to restaurant); *Jean Barnes Collections v. Elston*, 413 So.2d 797, 798 (Fla. 1st Dist.Ct.App. 1982) (assault in hotel room). Distinguishing "normal creature comforts" from "amusement ventures" becomes a more difficult task, however, when the many forms of recreation are considered.

In *Gray v. Eastern Airlines, Inc.*, 475 So.2d 1288 (Fla. 1st Dist.Ct.App.1985), a flight attendant, during a two-day layover in Rochester, New York, broke his nose while playing basketball at a YMCA near his hotel. Hotel guests were entitled to visitation rights at the YMCA without becoming members. The deputy commissioner deemed the activity a deviation from employment. The appellate court quoted *Doman*'s "distinct departure" test and Larson's "traveling employee rule," but observed that no Florida case had involved a traveling employee injured while playing sports. 475 So.2d at 1289–90. Citing a Louisiana case for the principle that one cannot expect a traveling employee to remain immobile while off duty, the court held that "exercise at a nearby facility should be regarded as ... reasonably required for personal health and comfort" and awarded workers' compensation benefits. 475 So.2d at 1289–90 (citing *Blakeway v. LeFebure Corp.*, 393 So.2d 928 (La. Ct.App.1981)) (employee injured in motel swimming pool).

The same court, however, refused benefits to another flight attendant who was injured while snow skiing 58 miles from his hotel during a layover. *Eastern Airlines v. Rigdon*, 543 So.2d 822 (Fla. 1st Dist.Ct. App.1989). Applying the *Doman* test, the court found the skiing trip to be "a purely private mission designed strictly as an amusement venture bearing little relation to his normal creature comforts and comprehended necessities." *Id.* at 823. It distinguished *Gray* by combining the distinct bases of proximity and danger:

> [T]he thrust of our decision in *Gray* was directed toward the insubstantial deviation and the reasonableness and foreseeability of the activity. We cannot conclude in the instant case that a 58–mile day-trip to pursue one's love of skiing is either a minimal deviation or a reasonable and foreseeable activity, especially in light of the nature of the sport of skiing which involves a great amount of risk.

*Id.*

Whether or not the recreation cases are distinguishable, *Doman* was cited as the legal standard in each. More importantly, the "distinct departure" test has been applied to third party tort claims. In *Hertz Corp. v. Ralph M. Parsons Co.*, 292 F.Supp. 108, 110 (M.D.Fla.1968), *aff'd*, 419 F.Supp. 783 (5th Cir.1969), an employee flew into Orlando Airport on a business trip to Cape Kennedy. He rented a car using the employer's credit card. While driving from Orlando to Cocoa Beach, the employee was involved in a head-on collision that killed

two and injured four in the other car. The survivors obtained a judgment against the employee and Hertz, the car rental company. Hertz paid the bulk of the judgment, then sued the employer for indemnification. The court found "no evidence that [the employee] at the time of the accident had made any deviation from the business purpose of the trip," cited *Doman*, then determined the employee to be within the scope of his employment as a matter of law. 292 F.Supp. at 110; *see also Thurston v. Morrison*, 141 So.2d 291, 295 (Fla. 2d Dist.Ct. App.1962) (citing *Hardware Mut. Casualty Co. v. Carlton*, 150 Fla. 729, 8 So.2d 665 (Fla.1942)) (accident while driving to business appointment is within scope of employment).

The district court thereafter expressly characterized *Doman* as a general legal principle, writing:

Further refinements of *employment liability law* in Florida have established that an employee whose work requires travel away from his employer's premises remains within the scope of his employment, except for non-essential personal errands. On purely private deviations, however, the scope of employment is suspended until the employee returns to the point of departure.

*Eberhardy v. General Motors Corp.*, 404 F.Supp. 826, 830 (M.D.Fla.1975) (citing *Doman*, 111 So.2d at 271–72) (emphasis added). The statement was essentially dictum, however, because the court found no employment relationship between the defendant and the tortfeasor. 404 F.Supp. at 830–31.

In *Saudi Arabian Airlines Corp. v. Dunn*, 438 So.2d 116 (Fla. 1st Dist.Ct.App. 1983), a Florida state court applied *Doman* to a tort committed by an off-duty employee. Saudi, a foreign airlines corporation, paid tuition and living expenses for Hazza Saud Al–Faqeer to learn English and attend a training school in the United States. Al–Faqeer planned to work for the corporation after his training. One afternoon, Al–Faqeer drove from school to a grocery store. On his return trip, he was involved in an automobile accident with Dunn, who

sued Saudi. Following trial, the jury found for Dunn.

On appeal, the court first ruled that, although Al–Faqeer was merely a trainee, "there was sufficient evidence to submit the question of an existence of an employment relationship to the jury." 438 So.2d at 121. In considering whether Al–Faqeer was acting within the scope of this relationship at the time of the accident, the court quoted at great length from *Doman*, then wrote:

Applying this rule to the facts in this case, the jury could have found that Al–Faqeer's employment with Saudi entailed travel away from his home in Saudi Arabia to the United States; that when Al–Faqeer drove to Albertsons to buy groceries, he was attending to the normal creature comforts and reasonably comprehended necessities; that his trip to Albertsons was not a non-essential personal errand, and thus, he was not deviating from the course and scope of his employment.

*Id.* at 122.

Curiously, perhaps the most analogous tort case makes no mention of *Doman*. In *Whetzel v. Metropolitan Life Ins. Co.*, 266 So.2d 89 (Fla. 4th Dist.Ct.App.1972), an insurance salesman won a three-day paid vacation in Miami as a bonus for job performance. Following a company cocktail party to recognize the winners, the salesman and two other employees "went out on a fun trip," sampling the local bars. At 3:30 a.m., while searching for another club, the salesman collided with a motorcycle rider, who sued the company.

The trial court set aside a jury verdict and entered judgment in accordance with the insurance company's motion for directed verdict. In affirming, the appellate court did not address the traveling employee rule, citing only general tests for the scope of employment. "It would be asking a lot of any court to infer that these three men, out 'on the town' going from bar to bar at 3:30 A.M. in Miami, Florida, were acting in the furtherance of the business and for the benefit of the [employer]." 266 So.2d at 91. Certainly, however, the drink-

ing spree could be viewed as a "distinct departure for a nonessential personal errand" under *Doman.*

After long following *Doman* in both workers' compensation and tort cases, the First District Court of Appeal recently questioned its vitality. In *Garver v. Eastern Airlines,* 553 So.2d 263 (Fla. 1st Dist. Ct.App.1989), a flight attendant in Los Angeles on a layover arranged to have lunch at a restaurant with a friend who lived in the area. The two then proceeded in the friend's car toward his home, located nearly twenty miles from the restaurant. After driving approximately five miles, they were involved in an automobile accident. The flight attendant was initially denied workers' compensation benefits for having deviated from her employment at the time of the accident.

The appellate court conceded that the various opinions regarding compensation to traveling employees "cannot be easily reconciled," then attempted to "clarify some of the perceived inconsistencies...." 553 So.2d at 264. It first harmonized *Gray* and *Rigdon* by focusing on "the *reasonableness* of the activity engaged in by the claimants at the time of their injuries." 553 So.2d at 265 (emphasis in original).

"[W]e see a material difference between the type of recreation indulged in during the layover by the employee in *Gray,* playing basketball at a nearby YMCA that he was entitled to use, because he was a hotel guest, and by the employee in *Rigdon,* downhill skiing at a resort located fifty-eight miles from the employee's hotel. We are of the view that reasonable minds would generally agree that downhill skiing is an activity that is far more conducive to the occurrence of serious injury than that of basketball...."

*Id.*

The court next addressed the rule articulated in *Doman,* and cited in *Rigdon,* that a traveling employee "engaged in a purely private mission" acts outside the scope of his employment. It suggested that "a strict application" of this rule would deny benefits to *any* off-duty employee injured away from his hotel, even if driving to a nearby restaurant. *Id.* at 265. The court dismissed the *Doman* test as mere dictum, which either lacks precedential value or "has long since been eroded and is no longer applicable." *Id.*

Finally, relying primarily upon out-of-state authority, the appellate court stated "the proper test" for a traveling employee: he is entitled to workers' compensation

if the injury arises out of a risk which is reasonably incidental to the conditions and circumstances of the employment.

. . . .

In deciding whether the particular activity engaged in by the employee during or before his or her injury was reasonable, the trier of fact should consider a number of factors. One is whether the employer placed any restrictions on the worker's activities during the layover. Another important factor to consider is whether the employer reimbursed the employee for certain expenses incidental to travel, which, if done, would support a conclusion that the employer reasonably anticipated that the employee would make certain expenditures for personal activities during the times that the employee was not actively engaged in duties on behalf of the employer.

553 So.2d at 267–68 (citations omitted). Applying this test, the court found nothing unreasonable about driving to a friend's house for a social visit, and therefore awarded benefits. *Id.* at 268.

The undersigned does not believe that *Garver* either reconciles or properly applies Florida law. First, it is still not clear whether the different results in *Gray* and *Rigdon* are based on proximity or danger: what if Gray had played basketball 58 miles from his hotel and Rigdon had skied on a nearby hill? Second, as the foregoing analysis of Florida precedent should make clear, the *Doman* test does not automatically deny benefits to an employee injured outside his hotel; the question is whether the employee was pursuing "normal creature comforts and reasonably comprehended necessities" or strictly personal "amuse-

ment ventures." *E.g., Leonard v. Dennis*, 465 So.2d 538, 541 (Fla. 2d Dist.Ct.App. 1985) (driving to dinner is within scope). Third, the "general rule" of *Doman*, though dictum therein, has been adopted in holdings of the First District Court of Appeals and sister courts. *E.g., Pan American World Airways v. Wilmot*, 492 So.2d 1373, 1374 (Fla. 1st Dist.Ct.App.1986); *Leonard*, 465 So.2d at 541. To maintain uniformity, "a three-judge panel should not expressly overrule or recede from a prior decision of [the district] court on the same point of law." *O'Brien v. State*, 478 So.2d 497, 499 (Fla. 5th Dist.Ct.App.1985); *see also Carr v. Carr*, 569 So.2d 903, 903 (Fla. 4th Dist.Ct.App.1990) (court must follow own cases). Such departures from *stare decisis* require *en banc* consideration under Florida Rule of Appellate Procedure 9.331. *See generally* Anne Cawthon Booth and Julian Clarkson, *The Florida En Banc Rule*, 36 U.Fla.L.Rev. 71, 106 & n. 54 (1984).[4] Fourth, the *Garver* court listed factors for "the trier of fact" to consider, yet ruled without a remand for factual findings. Fifth, another panel of the First District Court of Appeal has since applied *Doman. Rockhaulers, Inc. v. Davis*, 554 So.2d 654, 656 (Fla. 1st Dist.Ct.App.1989).

■ In sum, *Doman* still represents the greater weight of authority for awarding workers' compensation benefits to traveling employees. More importantly, the "distinct departure" test should be strictly applied in tort cases, where employer liability is not so broadly read. Thus, while activities related to the necessities of travel, such as eating in restaurants or sleeping in hotels, may remain within the scope of employment under tort law, those related to mere amusements do not. Most, if not all, recreational activities will, by definition, fall into the latter category. This approach recognizes that, during his off-duty hours, a traveling employees is generally free to do as he pleases; the employer lacks the power of control that ordinarily justifies respondeat superior liability. *See Lundberg v. State*, 25 N.Y.2d 467, 306 N.Y.S.2d

947, 255 N.E.2d 177 (1969) (*cited in Panchak v. United States*, No. 84 Civ. 3352, slip op. at 4, 1985 WL 1518 (S.D.N.Y. June 4, 1985) (LEXIS, Genfed library, Dist file)).

■ Because the agreed record establishes that Hill had already eaten dinner, and drove to Evil People solely for personal enjoyment, the Court holds, as a matter of law, that he was acting outside the scope of his employment at the time of the accident. Even under the more liberal *Garver* analysis, drinking beer before and during a five-hour visit to a topless bar, then driving home at 1 or 2 a.m., could not be considered reasonable recreational conduct. Consequently, ESI is not vicariously liable to LIBERTY MUTUAL for Hill's negligence.

## Conclusion

The Court hereby ORDERS and ADJUDGES that:

1. Defendants' Motion to Dismiss for Want of Prosecution (DE 50) is DENIED.

2. The Motion for Leave to Amend (DE 44) is GRANTED, and the Fourth Amended Complaint is amended to substitute LIBERTY MUTUAL for Alamo as Plaintiff.

3. Plaintiff's Motion for Summary Judgment (DE 27) is DENIED.

4. ESI's Motion for Summary Judgment (DE 29) is GRANTED.

5. The Clerk of the Court shall enter Final Judgment accordingly.

6. The Clerk of the Court shall thereafter close this file and declare any remaining motions moot.

DONE and ORDERED.

---

4. The same rule of jurisprudence applies to decisions of the Eleventh Circuit Court of Appeals.

*United States v. Machado*, 804 F.2d 1537, 1543 (11th Cir.1986).