Margarita · TELLO, M.D., as personal representative of the Estate of Jose Miguel Pietri Tello, her deceased son, for the benefit of the Estate's beneficiaries, Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD. a/k/a Royal Caribbean International a/k/a Royal Caribbean Cruise Lines, Defendant.

Case No. 11–24503–CV.

United States District Court, S.D. Florida.

March 30, 2013.

Ibrahim Reyes–Gandara, Infante Zumpano, Coral Gables, FL, for Plaintiff.

Amanda Lesley Jacobs, Royal Caribbean Cruises Ltd., Darren Wayne Friedman, Elisha Sullivan, Foreman Friedman, PA, Miami, FL, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (D.E. 42)

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on Defendant Royal Caribbean Cruises, Ltd.'s Motion to Dismiss Plaintiff's Amended Complaint (D.E. 42, 6/14/12). Plaintiff Margarita Tello filed a Response in Opposition (D.E. 43, 7/2/12), and Defendant filed a Reply in Support (D.E. 45, 7/12/12). Having considered the referenced filings, related pleadings, and record, the Court finds as follows.

### I. Background

Plaintiff's Amended Complaint alleges the following.

In January 2011, Plaintiff Margarita Tello and son Jose Miguel Pietri Tello were passengers aboard Defendant's cruise ship, "The Liberty of the Seas." (Amended Complaint, D.E. 38 ¶¶ 14, 15.) Jose had recently turned twenty-one. (*Id.* ¶ 21.)

On the night of January 4, 2011, Jose and his friends went to the cruise ship's bar/dance club. (*Id.* ¶ 22.) Bartenders served Jose multiple alcoholic beverages, and Jose became intoxicated. (*Id.* ¶¶ 22, 23.)

Jose said goodnight to his friends and left the club at around 3 a.m. (*Id.* ¶¶ 24, 25.) He proceeded to walk around the cruise ship in an inebriated and disoriented state. (*Id.* ¶ 25.)

At around 3:30 a.m., Jose encountered a crewmember who was cleaning the game room at one of the ship's ocean decks. (*Id.*) Jose appeared intoxicated to the crewmember, and the crewmember could sense that "something was wrong." (*Id.*) Nonetheless, the crewmember did nothing to assist Jose. (*Id.* ¶ 26.)

Jose exited the game room and proceeded to walk around the ocean deck. (*Id.*

¶ 27.) He attempted to reenter the interior of the ship twice, but the doors that he tried to open were locked. (*Id.*)

Jose then approached a service ladder and began climbing the outside railing, apparently hoping to get down to a lower deck and find access to reenter the ship. (*Id.*) He fell overboard and presumably drowned. (*Id.* ¶¶ 1, 28.) When Jose fell overboard, the ship was approaching Belize City, Belize. (*Id.* ¶ 29.)

At some point Margarita discovered that Jose had not returned to their cabin. (*Id.* ¶ 30.) She went walking around the ship to look for him and notified cruise employees that she was looking for her son. (*Id.*) At around 7 a.m., an unidentified crewmember told Margarita that her son was likely sleeping in someone else's cabin. (*Id.*) Margarita insisted that Jose would not act that way and requested that a search be conducted. (*Id.*)

Belize Coast Guard officers were not notified until 11 a.m. that a passenger from ship had fallen overboard. (*Id.* ¶ 31.)

The ship allegedly maintained 800 closed circuit television cameras on board. (*Id.* ¶ 32.) At the time of Jose's fall, however, no one was manning the surveillance room. (*Id.*)

Following review of video footage showing Jose's fall, the ship's captain or someone in similar uniform told Margarita that her son had committed suicide. (*Id.* ¶ 53.) Margarita is a devout Catholic, and in the theology of the Catholic Church, death by suicide is allegedly a "grave or serious sin, preventing the sinner's soul from eternal life." (*Id.* ¶¶ 55, 56.) Margarita thus concluded that Jose's "soul [was] not at rest," that she would "not meet [Jose] again in the afterlife," and that Jose had "gone to hell." (*Id.* ¶ 56.)

Margarita filed this action against Royal Caribbean raising the following claims:

| Count | Claim | Allegations | Damages Sought |
|---|---|---|---|
| I | Negligence | a. failure to take into account "guarded down" state of mind of cruise passengers when serving them alcohol; | Damages allowed under the Death on the High Seas Act |
| | | b. failure to properly hire, train, supervise and/or monitor bartenders who serve alcohol so that they do not overserve; | |
| | | c. failure to properly hire, train, supervise and/or monitor crewmembers who encounter inebriated passengers; | |
| | | d. failure to supervise and monitor excessive consumption of alcohol by passengers; | |
| | | e. failure to otherwise maintain a safe environment aboard the cruise ship; | |
| | | f. failure to implement procedures to ensure passenger safety; | |
| | | g. failure to provide adequate security for passengers; | |
| | | h. failure to implement adequate security policies and procedures necessary to provide passengers with safe environment; | |
| | | i. failure to properly train crewmembers in dealing with inebriated passengers; | |
| | | j. failure to adequately provide safety and security plan meeting industry standards, including the live monitoring of the 24–hour closed circuit television cameras; | |

| | | | |
|---|---|---|---|
| | | k. failure to provide safety and security to passengers commensurate with the activities conducted on the cruise ship; | |
| | | l. failure to train bartenders in not promoting excessive alcohol consumption by guests; | |
| | | m. failure to comply with industry and other standards, status and/or regulations; | |
| | | n. failure to implement a search-and-rescue operation in a timely manner; | |
| | | o. failure to contact the closest search-and-rescue operation in a timely manner | |
| II | Negligent hiring, retention, training, and supervision | a. failure to properly screen and hire crewmembers, employees, and/or agents; | All damages allowed under Florida law, including non-economic damages |
| | | b. failure to properly train crewmembers in assessing the state of inebriation of passengers to whom they serve alcohol; | |
| | | c. failure to promulgate and implement rules and regulations to deter excessive sale of alcohol to passengers; | |
| | | d. failure to promulgate and implement a compensation system for bartenders that does not incentivize excessive sale of alcohol; | |
| | | e. failure to supervise so as to deter the "pumping alcohol" method employed by Royal Caribbean bartenders; | |
| | | f. failure to train crewmembers in assessing a risk and contacting security | |
| III | Negligent infliction of emotional distress | Negligent infliction of emotional distress by cruise ship captain, or similarly dressed ship officer, in telling Margarita that Jose had committed suicide | All damages allowable under applicable law |
| IV | Intentional infliction of emotional distress | Intentional infliction of emotional distress by cruise ship captain, or similarly dressed ship officer, in telling Margarita that Jose had committed suicide | All damages allowable under applicable law |
| V | *Respondeat superior* or Agency | Liability for tortious acts of agents, including the captain, the bartenders, and the crewmember that was cleaning the game room | Unspecified |

(*See id.* at 8–17.)

## II. Motion

Royal Caribbean moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint in its entirety. (*See* Motion, D.E. 42 at 2.) Royal Caribbean argues in relevant part that: (a) Count I asserts nonexistent legal duties and otherwise fails to allege sufficient factual matter to state a negligence claim; (b) Counts II and V are non-actionable to the extent they seek damages that are not allowed under the Death on the High Seas Act; and (c) the Amended Complaint fails to adequately allege negligent, hiring, retention, training, or supervision, negligent infliction of emotional distress, intentional infliction of emotional distress, or *respondeat superior*/agency liability. (*Id.* at 2–13.)

Margarita responds that (a) Count I is pled with sufficient particularity, and Royal Caribbean's argument that Count I asserts nonexistent legal duties is premature; (b) some of her claims—presumably the emotional-distress counts—do not stem directly from Jose's death, so damages sought for those claims are not limited by the Death on the High Seas Act; and (c) the Amended Complaint adequately states claims for negligent hiring, retention, training, and supervision, negligent infliction of emotional distress, intentional infliction of emotional distress, and *respondeat superior*/agency liability. (Response, D.E. 43 at 3–11.)

### III. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing whether a complaint should be dismissed, the Court accepts the facts alleged in the Complaint as true, and construes all reasonable inferences therefrom in the light most favorable to Plaintiffs. *Bank v. Pitt*, 928 F.2d 1108, 1109 (11th Cir.1991).

### IV. Discussion

#### a. Negligence (Count I)

■ The Death on the High Seas Act establishes a cause of action for the death of a person "caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any state." 46 U.S.C. § 30302. The Act applies to maritime incidents occurring within the territorial waters of foreign states. *Ridley v. NCL (Bahamas) Ltd.*, 824 F.Supp.2d 1355, 1359 (S.D.Fla.2010) (citing *Sanchez v. Loffland Bros. Co.*, 626 F.2d 1228, 1230 n. 4 (5th Cir.1980)). By its express terms, the Act does not permit the award of non-pecuniary damages. 46 U.S.C. § 30303; *see also Sanchez*, 626 F.2d at 1230 ("DOHSA specifically limits recoverable damages to those pecuniary in nature.").

■ The Act "provides a cause of action for death due to negligence." *Ford v. Wooten*, 681 F.2d 712, 716 (11th Cir.1982).

■ "To plead negligence, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir.2012) (citing *Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir.2008)).

■ A vessel owner owes a duty to its passengers to exercise "reasonable care under the circumstances." *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

Here the Court finds that Margarita has adequately pled a cause of action for negligence in her Amended Complaint. The facts alleged support a plausible claim that Royal Caribbean failed to exercise "reasonable care under the circumstances" in several respects—*e.g.*, over-serving Jose, failing to assist him, failing to initiate a prompt search-and-rescue, etc.—and that Royal Caribbean's acts or omissions precipitated Jose's death. *See, e.g., Doe v.*

*Royal Caribbean Cruises, Ltd.,* No. 11–23323–CIV, 2011 WL 6727959, at *4 (S.D.Fla. Dec. 21, 2011) (where plaintiff was served alcohol at ship lounge, was observed by crewmembers staggering around drunk and rebuffing advances of another passenger, and was later raped by other passenger, plaintiff stated actionable claim for negligence against cruise ship). Although Royal Caribbean argues that Margarita's claim is predicated on nonexistent legal duties, the Court agrees with Margarita that whether Royal Caribbean owed various specific legal duties is an issue more properly addressed at later stages of the case. *See, e.g., Bridgewater v. Carnival Corp.,* No. 10–22241–CIV, 2011 WL 817936, *2 n. 3 (S.D.Fla. Mar. 2, 2011) ("Carnival disputes whether it owed a duty to Plaintiff under the facts as pleaded. However such a contention is more appropriate for summary judgment than for the consideration upon a motion to dismiss." (record citation omitted)); cf. *Hesterly v. Royal Caribbean Cruises, Ltd.,* 515 F.Supp.2d 1278, 1283 (S.D.Fla.2007) ("Insofar as Hesterly alleges that Royal Caribbean had a 'duty to exercise reasonable care under the circumstances,' Count I is sufficient to withstand Royal Caribbean's Motion to Dismiss.").

On this basis the Court denies Royal Caribbean's Motion to Dismiss as to Count I.

### b. Negligent Hiring, Retention, Training, and Supervision (Count II)

 Negligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness. *Stires v. Carnival Corp.,* 243 F.Supp.2d 1313, 1318 (M.D.Fla.2002) (citing *Garcia v. Duffy,* 492 So.2d 435, 438 (Fla.Dist.Ct.App. 1986)). The issue of liability focuses primarily upon the adequacy of the employer's pre-employment investigation into the employee's background. *Id.* To state a cause of action for the tort of negligent hiring or retention, a plaintiff must allege facts showing that the employer was put on notice of the harmful propensities of the employee. *Id.* (citing *Willis v. Dade County Sch. Bd.,* 411 So.2d 245, 246 (Fla. Dist.Ct.App.1982)). The principal difference between negligent hiring and negligent retention as a basis for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness. *Id.* (citing *Garcia,* 492 So.2d at 438).

Here the Court finds Margarita's allegations insufficient to state a claim that Royal Caribbean negligently hired or retained any crewmembers. The Amended Complaint avers only, in relevant part, that Royal Caribbean failed "to properly screen, investigate, interview, and otherwise hire crewmembers, employees, and/or agents." (Amended Complaint, D.E. 38 ¶ 49a.) Margarita alleges no facts indicating that Royal Caribbean's crewmembers were unfit for employment and that Royal Caribbean knew or should have known of their unfitness. And any alleged negligence by the crewmembers in the case at the bar cannot sustain Margarita's claim, as it would not establish prior notice of unfitness to Royal Caribbean. *See, e.g., Smolnikar v. Royal Caribbean Cruises Ltd.,* 787 F.Supp.2d 1308, 1322 (S.D.Fla. 2011). The Court thus finds that Margarita has pled insufficient factual matter to sustain a negligent-hiring-or-retention claim. Furthermore, to the extent that Count II alleges negligent training or supervision, the Court finds these allegations duplicative of substantially similar claims already raised under Count I.

For these reasons, the Court grants Royal Caribbean's Motion to Dismiss as to Count II.

### c. Negligent Infliction of Emotional Distress (Count III)

 Under Florida law, the so-called "impact rule" generally requires that " 'before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.' " *Fla. Dep't of Corr. v. Abril,* 969 So.2d 201, 206 (Fla.2007) (quoting *R.J. v. Humana of Fla., Inc.,* 652 So.2d 360, 362 (Fla.1995)).

 To maintain a negligent-infliction-of-emotional-distress claim in the absence of a direct impact, "the complained-of mental distress must be 'manifested by physical injury,' the plaintiff must be 'involved' in the incident by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical impairment 'within a short time' of the incident." *Willis v. Gami Golden Glades, LLC,* 967 So.2d 846, 849 (Fla.2007) (quoting *Eagle–Picher Indus., Inc. v. Cox,* 481 So.2d 517, 526 (Fla. Dist.Ct.App.1985)).

In short, a plaintiff claiming negligent infliction of emotional distress must show "either impact upon one's person or, in certain situations, at a minimum the manifestation of emotional distress in the form of a discernible physical injury or illness." *Gracey v. Eaker,* 837 So.2d 348, 355 (Fla. 2002).

Based on the foregoing, the Court finds Margarita's allegations insufficient to state a claim for negligent infliction of emotional distress. The allegedly tortious conduct in this case—*i.e.,* a captain's communication to Margarita that her son had committed suicide—involved no physical impact to Margarita. To sustain her claim, therefore, Margarita must allege some manifestation of physical injury beyond mere mental distress. Margarita's Amended Complaint avers only that she "has suffered severe and debilitating mental anguish, and has suffered other severe and debilitating effects such as emotional distress proximately caused by said conduct, which has irreparably, severely and permanently harmed" her. (Amended Complaint, D.E. 38 ¶ 57.) As Margarita suffered no impact and alleges no physical injury resulting from the conduct at issue, the Court finds that Margarita has pled insufficient factual matter to sustain her negligent-infliction-of-emotional-distress claim.

On this basis the Court grants Royal Caribbean's Motion to Dismiss as to Count III.

### d. Intentional Infliction of Emotional Distress (Count IV)

 To prove intentional infliction of emotional distress under Florida law, the plaintiff must establish: (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe. *Metro. Life Ins. Co. v. McCarson,* 467 So.2d 277, 278 (Fla.1985). Behavior claimed to constitute the intentional infliction of emotional distress must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. *Ponton v. Scarfone,* 468 So.2d 1009, 1011 (Fla.Dist.Ct.App.1985). The court must evaluate the conduct as objectively as possible to determine whether it is atrocious and utterly intolerable in a civilized community. *Id.*

Here the Court finds Plaintiff's allegations insufficient to state a claim for intentional infliction of emotional distress. One cannot say that the captain's allegedly tortious conduct—*i.e.,* informing Margarita that Jose had committed suicide—was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency." The reality is that Jose had in fact climbed a railing and fallen overboard. This is not a situation in which, with no justification or factual predicate, the captain decided to play a joke on Margarita by falsely informing her of her son's death. *Cf.* Restatement (Second) of Torts § 46 cmt. d, ilus. 1 (1965) ("As a practical joke, A falsely tells B that her husband has been badly injured in an accident, and is in the hospital with both legs broken. B suffers severe emotional distress. A is subject to liability to B for her emotional distress."). There is also no indication, nor any reasonable inference, that the ship's captain knew of Margarita's religious faith and characterized Jose's death as a "suicide" with the intention of causing Margarita extra emotional suffering. For these reasons, the Court finds Plaintiff's claim unsustainable. *See also Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 842 (9th Cir.2002) (although ship's master stated that plaintiff's husband was "probably dead and that his body would be sucked under the ship, chopped up by the propellers, and probably not be recovered," such conduct was not "extreme and outrageous," and "there [was] nothing in the record to support a finding that anybody from Princess went out of their way to torment or mistreat the Plaintiff in a manner that our society could view as utterly deplorable").

On this basis the Court grants Royal Caribbean's Motion to Dismiss as to Count IV.

### e. *Respondeat Superior/Agency Liability (Count I)*

"An employer may be vicariously liable to third parties under the principle of *respondeat superior* for damages and injuries caused by its employee's negligent acts which are committed within the scope and course of his employment." *Liberty Mut. Ins. Co. v. Electronic Sys., Inc.*, 813 F.Supp. 802, 805 (S.D.Fla.1993).

"[T]he doctrine of *respondeat superior* applies to hold a carrier responsible for the defaults of its crew." *Muratore v. M/S Scotia Prince*, 845 F.2d 347, 353 (1st Cir. 1988) (citation omitted). Vicarious liability may also be established by showing an "agency relationship," which involves (1) acknowledgement by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent. *Lobegeiger v. Celebrity Cruises, Inc.*, 869 F.Supp.2d 1350, 1356 (S.D.Fla. 2012).

To the extent that crewmembers may have been negligent in over-serving, failing to assist, failing to monitor, failing to safeguard, or failing to promptly search for Jose, the Court finds that Margarita has stated a plausible claim for *respondeant superior* or agency liability. While Royal Caribbean argues that Margarita's respondeat-superior/agency-liability count seeks damages that are non-recoverable under the Death on the High Seas Act, the damages sought under that count are actually not specified in the Amended Complaint. There appears no dispute, at any rate, that recovery under that count is limited to pecuniary damages allowable under the Act.

For these reasons the Court denies Royal Caribbean's Motion to Dismiss as to Count V.

### V. Conclusion

It is accordingly **ORDERED AND ADJUDGED** that:

1. Defendant Royal Caribbean Cruises, Ltd.'s Motion to Dismiss Plaintiff's Amended Complaint (D.E. 42, 6/14/12) is **GRANTED** as to Counts II, III, and IV.

2. Defendant Royal Caribbean Cruises, Ltd.'s Motion to Dismiss Plaintiff's Amended Complaint (D.E. 42,

6/14/12) is **DENIED** as to Counts I and V.

3. Counts II, III, and IV of Plaintiff Margarita Tello's Amended Complaint are **DISMISSED**.